THE RECTOR, WARDENS AND VESTRYMEN OF THE CHURCH OF THE HOLY COMMUNION, PLAINTIFFS IN ERROR, v. THE PATERSON EXTENSION RAILROAD COMPANY AND THE NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, DEFENDANTS IN ERROR.

Submitted March 26, 1901—Decided June 17, 1901.

1. The railroad company located its road, not upon, but near the line of the church property, on which the church was erected. The railroad was projected and constructed in 1881. In constructing it along the church property the company made an excavation of nineteen feet. In the process of excavation the

earth on the south side of the church was almost entirely removed and the foundation exposed, and the church on that side began to show signs of deterioration and damage. On the 5th of December, 1881, a proposition was sent to the company, by the officers of the church, containing an estimate of damages, amounting to $3,500, and offering for that sum to release the company from all responsibility for present repairs and future damage by reason of constructing and operating the railroad. That proposition the company declined. Then an agreement was made that the company should put the outside of the building and the foundation and adjoining walls in repair and make them safe, and that the church should, at the expense of the company, improve and refit the interior walls. The company did all the work outside. The inside work was done by the church. It cost $1,000, which was paid by the company. On the 9th of January, 1882, the church gave a receipt to Mr. Hobart in these words: "Received from G. A. Hobart, Pt. Pat. Extension, one thousand dollars in full settlement and discharge of all damages done by Railroad Co. against our church. Railroad Co. to pay for all work in process." The wall was built by the company. Its location, dimensions and construction and the character of its foundations were committed to the exclusive control of the company. It was located within four and one-half feet of the track on which the company was to run its trains. The projection of the ties brought the force of the vibrations caused by the running of the trains nearer the wall. At the top the wall is clear of the church property; at the bottom it is five feet upon the church property, leaving the wall at the base three feet in width on the property of the company. In 1886 further damage to the church building was sustained, which was settled by the payment of $100. In 1887 the south wall of the church had settled, the floors had gone down and gables cracked, involving a considerable outlay for reparation. A suit was brought by the plaintiffs against the defendants to recover the damages sustained in 1887. It appeared at the trial that the wall was not properly underpinned, and that the jarring of the trains passing kept it settling all the time. The plaintiffs were nonsuited. In the Supreme Court the ruling of the Circuit was sustained, on the ground that the cause of action, if any, accrued as early as 1881, and was discharged by the receipt given in January, 1882, and also that the plaintiffs' suit was barred by the statute of limitations. *Held*, that the damages sued for in this case did not result from an unlawful act of the defendants in making the excavations in 1881. The digging out of the cut was the occasion for requiring the erection of a wall for the protection of the church property, but was not the cause of the injury which was subsequently sustained.

2. In such cases the cause of action depends upon actual damage, and the statute of limitations begins to run from the time such damage is sustained.

3. It is a fundamental principle of law, applicable alike to breaches of contract and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act. The injury done in 1881 was a complete cause of action, in respect of which compensation was made; but there was a liability to further disturbance. In 1886 additional damages were sustained, which gave a new and distinct cause of action. In any action brought to recover the damages sustained in 1881, or brought in 1886 to recover the damages then sustained, the plaintiffs could not have recovered for the damages that might be sustained in 1887.

4. The damage resulting from time to time to the church property from the condition of the wall created a new cause of action, which gave the plaintiffs a right to recover such damages as had arisen within six years.

5. The injury for which this suit was brought was a new cause of action, which arose in 1887, and the suit was brought within six years from the time those damages were sustained.

---

On error to the Supreme Court. The opinion of the Supreme Court is reported in 34 *Vroom* 470.

For the plaintiffs in error, *Francis Scott.*

For the defendants in error, *John W. Griggs.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. This was a suit brought by the plaintiffs in error against the two railroad companies named as defendants in error. The action is in tort. At the trial in the Circuit the court directed a verdict for the defendants, on the ground that the receipt of January 9th, 1882, hereinafter referred to, was a conclusive acquittance of the damages sued for. The judgment entered upon that verdict was affirmed in the Supreme Court, from which judgment of affirmance the plaintiffs brought this writ of error.

The construction of the railroad in question was contracted for by the Paterson Extension Railroad Company, which, pending the construction of the railroad, was consolidated, with other companies, into the New York, Susquehanna and Western Railroad Company. In 1881 the road was located,

not upon, but near the line of the church property on which the church edifice was erected. The railroad was projected and constructed in the early part of 1881. In constructing it along the church property the company made an excavation of from sixteen to nineteen feet below the level of the street on which the church fronted. In the process of excavation the earth on the south side of the church was almost entirely removed, and the foundation wall of the church for a considerable distance exposed, and the church on that side began to show signs of deterioration and damage. In that situation negotiations were commenced; they were conducted by Mr. Wurts, representing the church, and Mr. Hobart, representing the railroad company. These negotiations began before the 5th of December, 1881. On that date a proposition was sent to Mr. Hobart by the officers of the church, containing an estimate of damages amounting to $3,500, and offering for that sum to release the railroad company "from all responsibility for present repairs and future damage by reason of constructing and operating said railway." That proposition the company declared could not be entertained. Mr. Wurts testifies: "We finally agreed that the railroad company should put the outside of the building in repair, and the foundations and adjoining walls in repair, and make it safe, which they promised to do, and the church would, at the expense of the railroad company, improve and refit the interior wall—that is, the plaster, the windows, &c." The railroad company did all the work outside. The inside work was done by the church. It cost $1,000, and the bills were presented by the church to the railroad company and the money paid. This agreement between the church and the railroad company, although in parol, was competent evidence. During the progress of the work of inside repairing money was advanced by Mr. Hobart, as a favor to the church, $500 of which was advanced, by his check, on the 29th of December, 1881. On the 9th of January, 1882, the church gave a receipt to Mr. Hobart, in these words:

"Jan. 9, 1882.

"Received from G. A. Hobart, Pt. Pat. Extension, one thousand dollars *in full settlement and discharge of all damages done by Railroad Co. against our church.* Railroad Co. to pay for all work in process.

"H. A. COLLINS,

"$1000.00.                                                                    *Treas.*"

This receipt was unquestionably a discharge of all damages sustained by the church up to its date.

The cut in the rear of the church is nineteen feet in depth, and the wall built by the railroad company is nineteen feet high, and is tapering, being eight feet wide at the bottom and eighteen inches at the top. At the top of the wall the face is clear of the church property, but at the bottom it is five feet upon the church property, leaving the wall at the base three feet in width on the property of the railroad company.

In the early part of 1886 further damage to the church building was sustained, which, as appears by the correspondence between Mr. Hobart and Mr. Wurts, ended in the payment by the company of $100. Mr. Hobart, in his letter of March 22d, 1886, says that Mr. Potts, the president of the company, "would like to know in some definite shape that the payment which I proposed, $100, would be the end of their being called upon hereafter to pay for such repairs. I told him I would see you in reference to the matter again." A blank form of release was prepared by the railroad company and sent to the church. The vestry, by resolution, declined to execute the release, and under date of April 21st, 1886, Mr. Wurts wrote to Mr. Hobart as follows: "I enclose you a copy of resolution of vestry. I do not find any signs of settlement or damages since the last repairs, for which we now seek reimbursement, were made several months ago, and I think we are safe. Except in the event of some formidable damage or collapse, which we do not in the least anticipate, we shall not trouble the company again."

In 1887 the south wall of the church had settled about eight inches, the floors had gone down and the gables had

cracked, so that there was a large opening in each gable—
involving a considerable outlay for reparation.    The testi-
mony on the part of the plaintiffs showed that the damage
sustained in 1887 was the outcome of defects in the wall
erected by the company in 1881, arising from a failure to
properly secure the foundation to sustain the vibration caused
by the running of the company's trains.    For the damage
thus sustained in 1887 this suit was brought.    The suit was
commenced in 1891.    In the Supreme Court the ruling at
the Circuit was sustained, on the ground that the cause of
action, if any, accrued as early as 1881, and was discharged
by the receipt given to Mr. Hobart on the 9th of January,
1882, and that the plaintiffs' suit was also barred by the
statute of limitations.

It will be observed that the proposition of the church
authorities to the railroad company was for the settlement
of all damages, present and prospective, for $3,500; and that
proposition was declined by the company, and instead of it
the agreement was for the doing by the railroad company of
certain specified work, and that the receipt given to Mr. Ho-
bart is expressly made to be in full settlement and discharge
*of all damages done by the railroad company.*    Interpreted
by the language of the receipt itself, as well as in view of the
negotiations that preceded the giving of it, the receipt will
not bear the construction that it was intended to cover dam-
ages to be sustained thereafter.    Such a construction could
be made possible only by inserting words in the body of the
receipt.    Furthermore, the acts of the company in making
payments for subsequent damages, and the correspondence
between Mr. Hobart and Mr. Wurts, in April, 1886, are in
conformity with the construction that the receipt of January
9th, 1882, applied only to damages up to that time sustained.

Two questions were presented on the argument of this case
and in the opinion of the Supreme Court—*first,* whether the
damages sustained in 1887 were compensated for by the pay-
ment of 1882, as evidenced by the receipt to Mr. Hobart, and
*secondly,* the application of the statute of limitations to this
cause of action.    Both of these questions, though apparently

distinct, rest upon the solution of the first proposition; for if the injury sustained in 1887 was compensated for by the payment made in 1882, the application of the statute of limitations is immaterial; and, on the other hand, if the damages sustained in 1887 were not embraced in the settlement of 1882, then, the injury being a continuing injury, the statute of limitations would not begin to run until the damages were sustained.   The only case cited to sustain the view of the Supreme Court, that the injury sustained in 1887 was included in the payment made in 1882, was *Squires* v. *Inhabitants of Amherst,* 145 *Mass.* 192.   In that case the plaintiff's suit was for personal injuries, which he had sustained by reason of a defect in a highway.   At the time the plaintiff was injured he received not only a personal injury, but sustained damages to his horse, wagon and harness by the horse and wagon going off the end of a culvert on the highway. Prior to bringing the suit the plaintiff, for the consideration of $50, had given a receipt to the town "in full for all demands for damages sustained on the highway."   The court held that oral evidence was inadmissible to show that the plaintiff understood the sum paid as intended in settlement of the damage to his property only, and that it was agreed between him and the selectmen that if it appeared that he had been injured in his person he should be paid something more.   In that case the personal injuries sued for were sustained before the receipt was given, and oral evidence was properly excluded tending to show that the plaintiff understood that the sum paid was intended as a settlement of the damage to his property only, and that it was agreed that if it appeared that he had been injured in his person he should be paid something more.   On the argument before this court *McGuire* v. *Grant,* 1 *Dutcher* 356, was cited.   In that case the action was brought by the plaintiff to recover damages to his lot arising from an excavation by the defendant on his own premises, which caused the falling in of a part of the plaintiff's lot.   The entire damage had been sustained upon the removal of the soil by the defendant from the adjoining property, and the cause of action was then complete.

It was held by the Supreme Court that the measure of damages recoverable was the diminution in value of the plaintiff's lot by reason of the excavation. No new or independent cause of action had intervened to occasion further injury. The only allusion to the subject of damages is found on page 368 of the report, in which Chief Justice Green says: "The measure of damages in such case is not what it would cost to restore the lot to its former situation, or to build a wall to support it, but what is the lot diminished in value by reason of the acts of the defendant?" Neither of these cases has any relevancy to the case now before the court.

The damages sued for in this case did not result from an unlawful act of the defendants in making the excavation in 1881. The digging out of the cut was the occasion for requiring the erection of a wall for the protection of the church property, but was not the cause of the injury which was subsequently sustained. Nor did the damages result from the building of the wall, which was done by agreement between the parties. The agreement was that the company was to build the wall at its own expense and make it safe. The wall contracted for was for the protection of the church property in the future, and not a mere temporary expedient. The location, dimensions and construction of the wall and the character of its foundation were committed to the exclusive control of the railroad company. The church officers did not in any way participate in or supervise the work of construction. It is manifest that the company assumed responsibility for the protection of the church edifice from injury which might follow from the running of its trains. The first proposition in the course of negotiations was made by the officers of the church, offering for the sum of $3,500 to release the railroad company from all responsibility for present repairs and future damages by reason of constructing and operating the railroad. The company declined that proposition, and instead chose to resort to the erection of a wall of the dimensions and construction that, in the judgment of its officials, would be sufficient to accomplish the purpose, paying the church for past injury to its property not a penny beyond

the amount expended for reparation. The wall was located by the company within four and a half feet of the track on which the company was to run its trains. The projection of the ties brought the force of the vibrations caused by the running of trains nearer to the wall. The evidence at the trial was that the wall was not properly underpinned, and the jarring of the trains passing kept jarring and settling it all the time. Thereafter, from time to time, injury was done to the church property. The injury and the cause of it continued until 1887, when the damages sued for in this case were sustained. The injury for which this suit was brought is entirely distinct from the injury arising from the first excavation, which was settled by the receipt of 1882. The injury which was embraced in that settlement was caused by the original excavation. The injury now sued for resulted from the defects in the wall as constructed in 1882.

The wall did not become the property of the plaintiffs; it was part of a retaining wall, extending beyond the church property a considerable distance in both directions. No action could have been maintained by the plaintiffs to recover damages by reason of its defective construction until damage actually occurred. For neither negligence, nor fraud, nor other wrong or immoral conduct or intent, will give rise to a cause of action unless it has resulted in illegal damage. 1. *Encycl. L. & Pro.* 667. It is a fundamental principle of law, applicable alike to breaches of contract and to torts, that, in order to found a right of action, there must be a wrongful act done and a loss resulting from that wrongful act. *Warwick* v. *Hutchinson*, 16 *Vroom* 61. The injury sustained by reason of the defective construction of the wall, as it was located, was a continuing injury. It is quite clear that if a suit had been brought in 1882, the plaintiffs could not have recovered in such a suit for the damages which would be sustained in 1887. It would have been impossible at that time to have anticipated the future deterioration in the wall and the damages arising therefrom, and to have made an estimate of the amount thereof as the basis of computation. Compensation in such a suit must be sought after the dam-

ages are sustained.  *Brewster* v. *Sussex Railroad Co.,* 11 *Id.*
57.  In such cases the cause of action depends upon the
actual damage, and the statute of limitations begins to run
from the time when such damage is sustained.  In 1886 an
injury did occur which might have been made the basis of
a suit at law.  It was compensated for by the payment of
$100.  In a suit brought at that time the plaintiffs could
not have recovered damages for the injury which would be
sustained in 1887.  The injury for which this suit was
brought was a new cause of action, which arose in 1887.
The statute of limitations, therefore, began to run from that
date, and this suit was brought within six years from the
time these damages were sustained.

In the leading case of *Backhouse* v. *Bonomi,* reported in
the Exchequer Chamber in *El., B. & E.* 622, and in the
House of Lords in 9 *H. L. Cas.* 502, and also in 16 *Eng.
Rul. Cas.* 216, the plaintiff was the owner of certain houses
standing on land which was surrounded by the lands of B,
C and D.  E was the owner of mines running underneath
the lands of all these persons.  He worked the mines in
such a manner (without actual negligence) that the lands
of B, C and D sank in; and after more than six years' inter-
val their sinking *occasioned an injury to the houses of A.*
It was held that a right of action accrued to A when this
injury actually occurred, and that his right was not barred
by the statute of limitations.  This case was decided in the
House of Lords by the concurrence of every member of the
court, upon the unanimous opinion of the judges who were
in attendance, for the reasons that were given in the judg-
ment of the Court of Exchequer Chamber.  The grounds of
decision were stated by the Lord Chancellor in these words:
"I think it is abundantly clear, both upon principle and
authority, that when the enjoyment of the house is inter-
fered with by the actual occurrence of the mischief, the cause
of action then arises, and that the action may then be main-
tained."  Lord Cranworth said: "The right of the plaintiff
is the right to the ordinary enjoyment of his land, and till
that ordinary enjoyment is interfered with, he has nothing

of which to complain. That seems to be the principle on which this case ought to be disposed of." In the Exchequer Chamber (*El., B. & E.* 655), Mr. Justice Willes, delivering the opinion of the court, used this language: "The contention on the part of the defendant is that the action must be brought within six years after the excavation is made, and that it is immaterial whether any actual damage has occurred or not. The jury, according to this view, would have, therefore, to decide upon the speculative question whether any damage was likely to arise; and it might well be that in many cases they would, upon the evidence of mineral surveyors and engineers, find that no damage was likely to occur, when the most serious injury afterwards might, in fact, occur, and in others find and give large sums of money for apprehended damage, which, in point of fact, never might arise. This is certainly not a state of law to be desired." *Id.* 657.

In *Darley Main Colliery Co.* v. *Mitchell,* 11 *App. Cas.* 127, the defendant had, by mining, taken away the substratum supporting the plaintiff's land, with some cottages on it. A subsidence having taken place, the defendant, by agreement, repaired the damage. This was in or about 1871. No further working was done, but in 1882 a further subsidence took place, causing further injury. In an action brought for the damage in 1882 the defendant pleaded the statute of limitations. It was held in the House of Lords, by Lord Halsbury, Lord Bramwell and Lord Fitzgerald, *dissentiente,* Lord Blackburn, affirming the judgment of the Court of Appeal, that a fresh cause of action arose when the further damage occurred in 1882, and that the action for this was not barred, although more than six years had elapsed since the damage first caused by the defendant's workings, and although more than six years had elapsed since the last workings by the defendant. The decision of the court was based upon the principle that every new subsidence, although proceeding from the same original act or omission of the defendant, was a new cause of action, for which damages may be recovered. In the course of his opinion Lord Fitzgerald used

this language, which is specially appropriate to this case: "There was a complete cause of action in 1868, when the first subsidence took place, in respect of which compensation was given, but there was a liability to further disturbance. The defendant permitted the state of things to continue, without taking any steps to prevent the occurrence of any future injury. A fresh subsidence took place, causing a new and further disturbance of the plaintiff's enjoyment, which gave him a new and distinct cause of action" (at *p.* 151). Similar remarks were made by Lord Halsbury and Lord Bramwell (at *pp.* 133, 146).

In *Lamb* v. *Walker,* 3 *Q. B. Div.* 389, the Court of Queen's Bench, by a majority (Mellor and Manisty), decided that where the foundations of the plaintiff's land and buildings had been undermined by the removal of lateral support through mining operations carried on by the defendant on his own land adjoining, and damage had manifested itself, a cause of action had completely arisen, both for apparent damage and for all future damage that might ensue from the original act. This decision was based upon the assumption that no fresh cause of action would arise when fresh damages might arise. This judgment was dissented from by Chief Justice Cockburn, who contended that the decision in Backhouse v. Bonomi, in the Exchequer Chamber and the House of Lords, established conclusively that it is not the withdrawal of the support previously afforded by the adjacent strata, but the actual disturbance of the plaintiff's enjoyment of his property, which constitutes a wrong and gives a legal ground of complaint, and the damage being the gist of the action, only the damage actually accrued could be recovered in the action, and any further damage must be recovered when it actually accrued in a subsequent action. The views of the Lord Chief Justice were approved in Darley Main Colliery Co. *v.* Mitchell, and Lamb *v.* Walker was there expressly overruled. In *Lamb* v. *Walker, supra,* Lord Chief Justice Cockburn says: "Of course, I do not lose sight of the rule that damages resulting from one and the same cause of action must be assessed and recovered once for all. But

the rule seems to me to have no application to the case, it being, in my view of the effect of Backhouse *v.* Bonomi, a mistake to say that the plaintiff had a right to the support of the adjacent strata, and that the removal of this constituted a violation of this right, by reason of which, when damage supervened, a cause of action arose."

Following the Darley Main Colliery case, in the subsequent case of *Crumbie* v. *Wallsend Local Board,* 1 *Q. B. Div.* 503 (*Court of Appeal,* 1891), an excavation was made by the local authorities under a street for the purpose of laying a sewer; it was not properly filled in, and in consequence subsidence of the plaintiff's land, with injury to houses, took place thereon, which began at a period more than six months before (that being the period of limitation of such an action), and went on continuously to the commencement of an action by the plaintiff in respect of such subsidence. It was held that the further subsidence which took place within the six months before action constituted a distinct cause of action, in respect of which the action was maintainable. Lord Esher, Master of the Rolls, in delivering the opinion of the court, said: "There is no cause of action for any such damage to the plaintiff's property until it has occurred. When a certain amount of such damage has occurred, there is only a cause of action in respect of that amount. Afterwards other damage may occur—that is to say, more of such damage may occur. There is no cause of action in respect of such further damage until it has occurred."

Numerous cases to the same effect as the cases above cited are cited in 16 *Eng. Rul. Cas.* 215, 250.

The cases in the courts of this state are in line with the decisions of the English courts on this subject. The leading case is Delaware and Raritan Canal Co. *v.* Wright, which is reproduced in Delaware and Raritan Canal Co. *v.* Lee. The facts in that litigation were these: Wright was the owner of a tract of land over which the canal company located and constructed its canal. For the land taken for that purpose Wright was paid, and, by a deed, conveyed the same to the canal company. Beyond the line of the tract so conveyed the company had constructed a culvert over Watson's creek.

The culvert was insufficient to discharge the water which should arise from rains or freshets, but was sufficient to discharge the water from springs and all ordinary sources. By reason of a freshet the land of Wright was overflowed, and suit was brought for damages. The culvert was constructed in 1833; the suit was commenced in 1845. The defendant pleaded, among other pleas, the statute of limitations. The judge at the trial charged the jury that the statute was no bar, and that the plaintiff was entitled to recover all damages proved to have been sustained by him at any time within six years next before the commencement of the suit. A verdict was found for the plaintiff, on which judgment was entered. The ruling of the trial judge was brought before the Supreme Court by a writ of error on exceptions taken. On error the judgment was affirmed, on the ground that the damage was the cause of action, and that in such cases the statute begins to run from the time of the injury and not from the doing of the act which occasioned the injury, which gave no cause of action until damage ensued. On the 1st of April, 1836, Wright conveyed the farm to Lee. There being a further overflow of the premises after that conveyance, Lee brought suit against the company for damages. His action was commenced in June, 1848. The statute of limitations was again pleaded and made a substantive defence at the trial. The trial court disregarded the statute of limitations, and instructed the jury that the plaintiff was entitled to recover all damages he had sustained within six years before the commencement of the suit. The plaintiff had a verdict, and the cause was brought to the Supreme Court on a writ of error, and the instruction of the trial judge was held to be correct. The first of these cases is reported in 1 *Zab.* 469, and the other case in 2 *Id.* 243. These cases were cited, with approbation, in *Brewster* v. *Sussex Railroad Co., supra.* That suit was brought to recover damages for the destruction by the defendant of the plaintiff's right of way to a lot of land in which she had a life estate. At the trial the jury was instructed to assess damages just as much as they thought the life estate was lessened in value by reason of having the access to the land cut off. The Supreme Court held that

this instruction was erroneous, and that damages could be recovered only up to the time of the commencement of the suit, on the principle that the injury was a continuous injury, and that compensation for subsequent loss must be sought in another suit after the damage was sustained.

The building of this retaining wall by the company was a lawful act. So far as the foundation rested upon the church property, it had the consent of the church. The duty of making it safe for the protection of the church, and also of reparation, devolved upon the company. The church had no power or duty in that respect; nor had it power to control the running of trains on the adjacent track. The wall gave evidence of deterioration shortly after it was built, and its incapacity to answer the purpose which it was designed to fulfill was demonstrated as early as 1886. Damage from time to time resulting to the church property from the condition of the wall, a new cause of action arose, which gave the plaintiffs the right to maintain an action and recover such damages as had arisen within six years. No steps were taken by the defendants to remedy the defects or to strengthen the wall. Adopting and applying to this case the language of Lord Fitzgerald, in *Darley Main Colliery Co.* v. *Mitchell, supra,* "There was a complete cause of action when the first subsidence took place, in respect cf which compensation was given; but there was a liability to further disturbance. The defendant permitted the state of things to continue, without taking any steps to prevent the occurrence of any future injury. A fresh subsidence took place, causing a new and further disturbance of the plaintiff's enjoyment, which gave him a new and distinct cause of action."

The direction of a verdict for the defendants was erroneous. The case made by the plaintiffs should have gone to the jury. For this error the judgment should be reversed.

*For affirmance*—VAN SYCKEL, GUMMERE, FORT, GARRETSON, HENDRICKSON.  5.

*For reversal*—THE CHIEF JUSTICE, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM.  6.