### BEUGGER v. ASHLEY et al.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

1. PLEDGES (§ 33*)—SUIT TO REDEEM—RELIEF IN EQUITY.

   Where the pledgees of contracts to purchase "Brewer's grains," without foreclosing the lien or giving notice to the pledgor, transferred same to a corporation in return for corporate stock, and where the amount of the debts secured by the pledge was in dispute, the pledgor was entitled to sue them in equity for an accounting, especially where they were attorneys for the pledgor, and in view of the fact that the contracts would expire and that the manner in which they had dealt with the contracts made it impossible to return them to the pledgor.

   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 89, 92; Dec. Dig. § 33.*]

2. LIMITATION OF ACTIONS (§ 100*)—COMMENCEMENT OF PERIOD—EQUITABLE ACTION.

   The ten years' statute of limitations will not commence to run against an equitable action against pledgees for an accounting in respect to a sale of the pledged property without foreclosure or notice, until the pledgor learns of such sale.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

3. LIMITATION OF ACTIONS (§ 197*)—PERIOD—PROOF.

   Evidence merely that a wrongful transfer of pledged property was made "some time in February, 1899," was insufficient to show that an equitable action based thereon and begun February 11, 1909, was barred by the ten years' statute of limitations.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 722–726; Dec. Dig. § 197.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. LIMITATION OF ACTIONS (§ 195*)—AFFIRMATIVE DEFENSE—BURDEN OF PROOF.
　　The statute of limitations, being an affirmative defense, must be proved
　　by the party invoking it.
　　　[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
　　711–716; Dec. Dig. § 195.*]

Appeal from Special Term, New York County.

Action by Johannes A. Beugger against Clarence D. Ashley and others. From an adverse judgment, plaintiff appeals. Reversed and rendered.

See, also, 140 App. Div. 934, 126 N. Y. Supp. 1122; 146 App. Div. 934, 131 N. Y. Supp. 1106.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

Norman B. Beecher, of New York City, for appellant.
Walter H. Pollak, of New York City, for respondents.

SCOTT, J. The plaintiff, in the years 1898 and 1899, was a member of the firm of Wreckshagen, Buegger & Herzog, composed of himself and the defendant Max Wreckshagen. It was organized for the purpose of buying and shipping what are described as "brewer's grains." To carry on this business it made time contracts with different brewers to take the grain resulting from the operation of their breweries. Plaintiff lived in Switzerland, and had contributed all the capital used and invested by the firm. Wreckshagen was the resident partner who ran the business here. He contributed no capital, but used liberally, for his personal purposes as well as for the firm's business, the money contributed by plaintiff.

The defendants Ashley, Emley, and Rubino were a firm of attorneys in the city of New York who were retained by plaintiff's firm under a general retainer. The defendant Ashley had become a member of the firm in May, 1898, and personally took no part in the transactions which have given rise to this action, and apparently knew nothing about the transactions until some time after they had taken place.

In May, 1898, plaintiff had visited this country, and it was then contemplated to turn the business of the firm of Wreckshagen, Buegger & Herzog over to a corporation, and a corporation by the same name was actually incorporated, although no transfer was made until later.

In December, 1898, the firm of Wreckshagen, Buegger & Herzog found itself in financial difficulties. It was threatened with a judgment for more than it could readily pay, and there were other claims against it which it was apprehended might be put in suit. It then held some 16 contracts with brewers which were thought to be of value, and these constituted substantially all of its valuable assets.

On December 29, 1898, plaintiff's firm, by Wreckshagen, who concededly had full authority, executed two assignments to the defendants Ashley, Emley, and Rubino, covering the outstanding brewer's contracts then held by plaintiff's firm. Only one of these contracts

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was produced upon the trial, but it is conceded that they were in identical form except that in one the consideration was stated as $2,-400 and in the other as $1,000. After executing these assignments, which were absolute in form, Wreckshagen, in behalf of his firm, assigned to the corporation above mentioned all of the remaining assets of his firm, and in January, 1899, the corporation appears to have made a third assignment to Ashley, Emley, and Rubino of certain other brewers' contracts which had not been fully completed at the time of the assignments in December.

[1] There is a serious controversy between the parties as to the purpose for which these assignments were made. The trial court has found, in accordance with the contention of the defendants respondents, that, at the time the assignments were made, the firm of Wreckshagen, Buegger & Herzog were indebted to Ashley, Emley, and Rubino in the sum of $2,400 for money loaned, and the further sum of $1,000 for professional services, and "that the said last-mentioned assignments were executed and delivered by the said Wreckshagen, Buegger, and Herzog in payment of the said loan of $2,400 and of the said indebtedness of $1,000 for legal services, subject, however, to an agreement that the said Wreckshagen, Buegger & Herzog, or their assigns, should have the right to a transfer of said contracts on payment to the said Ashley, Emley, and Rubino of the said $2,400, with interest from October 31, 1898, and of the said $1,000, with interest from December 29, 1898. Both assignments were absolute in form."

There is evidence to support this finding, and we therefore accept and adopt it; the legal effect of the finding above quoted being, as we construe it, and as the evidence requires that it should be construed, that the contracts were assigned to Ashley, Emley, and Rubino and held by them as security for the payment of the two items of indebtedness mentioned in the finding.

Early in February, 1899, the financial clouds which hung over Wreckshagen, Buegger & Herzog began to darken, and Wreckshagen became apprehensive that unpleasant proceedings might be taken against him personally, and thereupon, with the knowledge, if not at the suggestion of Rubino, he made a hasty departure for Europe. A few days after Wreckshagen's departure, plaintiff in Switzerland received two cablegrams. The first was unsigned and read:

"The firm is bankrupt, Max gone."

The second was signed "Rubino," and read:

"Send at earliest opportunity all shares endorsed in blank. You will be held responsible if you return."

The defendant Rubino denies that he sent or caused to be sent either of these cablegrams, and the mystery as to who did send them appears to be unsolved. It is not, however, of importance in our view of the case. The significant fact is that plaintiff, assuming, very naturally, that they had been sent by Rubino, at once cabled to the latter's firm asking for full particulars, and received no reply. After vainly waiting for information until July, plaintiff came to this coun-

try and retained a lawyer to inquire into the transactions and to protect his interests. It then appeared that some time in the month of February, 1899, the defendants Emley and Rubino had organized a corporation in the state of New Jersey under the name of the American Products Company, to which they and the defendant Ashley had transferred the sixteen brewers' contracts assigned by plaintiff's firm in exchange for $45,000 of the stock of said American Products Company issued to the defendants Emley and Rubino. No notice appears to have been given of this transfer to either plaintiff or Wreckshagen, nor does it appear that plaintiff had any knowledge of the transfer of the contracts to the American Products Company until he came to this country and instituted an investigation in the early summer of 1899. A conference of all the interested parties was held in August of that year, which resulted in a written proposition to plaintiff that, if he would pay the defendants respondents some $8,600 in cash, they would cause to be issued to him a minority interest in the stock of the American Products Company. This upon consideration he declined, and nothing further was done between the parties until this action was instituted.

We have then this state of facts presented upon the respondents' own showing. A business firm hopelessly insolvent and anticipating with good reason an entry of a judgment and the institution of other legal proceedings against it is induced by its attorneys to assign to them, as security for an alleged indebtedness of $3,400, all of its valuable assets consisting of contracts with numerous brewers. No steps are taken to foreclose the lien, but, without notice to either of the members of the assignor firm, the attorneys transfer all of these assets to a corporation formed by them in return for stock of the corporation issued to them. The situation thus presented is not unlike that which was considered in Treadwell v. Clark, 190 N. Y. 51, 82 N. E. 505, except that in that case the defendant and plaintiff had dealt at arm's length, and there was no question of the trust and confidence which exists between a client and his attorney. In that case stock had been pledged and had come into the defendant's hands under circumstances which preserved the plaintiff's right to redeem. As to the plaintiff's right to sue in equity, the Court of Appeals said:

"His (plaintiff's) right to maintain an equitable action is questioned, and it is argued that his remedy was at law, by a possessory action, or by an action at law for conversion. * * * The plaintiff's right to the stock had never been foreclosed, or divested, by any proceedings on the part of Bennett (the original pledgee), who held the title to it as pledgee. It is true that, as a general rule, an action in equity will not lie to redeem property pledged for a debt; but this case falls within a recognized exception to the rule. An equitable action is proper where special grounds appear."

In the principal case special grounds do appear. In the first place the amount of the indebtedness for which the assets were assigned as security is in dispute, and the evidence concerning it upon the trial was far from convincing. Such a dispute was one of the special grounds specified in Treadwell v. Clark. In the second place, the assets themselves were contracts which, in the nature of things, ran

out in time, and the pledgee had so dealt with them as to make it impossible to return them to the pledgor. The respondents' act in transferring them to a corporation was in the nature of a conversion, but the plaintiff is not therefore limited to an action at law for damages which would not only be inadequate but would throw on plaintiff the burden of proof which, under all the circumstances, should be borne by the respondents. The plaintiff's right to come into equity for an accounting is not to be doubted.

[2] It is urged, however, that whatever cause of action plaintiff has ever had is barred by the statute of limitations. Clearly the only limitation applicable was the ten-year statute, which applies to an equitable action (Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554), and that statute did not begin to run until plaintiff learned that the respondents had assumed to dispose of the contracts without notice of foreclosure (Treadwell v. Clark, supra), and this was not until some time after February, 1899.

[3] Indeed, if it were to be held, as respondents insist that it should be, that the statute began to run when the contracts were assigned to the American Products Company, still the defense of the statute of limitations would not be made out. The nearest that respondents come to fixing the date of that assignment is that it was "some time in February, 1899," which may have been the very last day of the month. This action was begun, as to these respondents, on February 11, 1909.

[4] The statute of limitations is an affirmative defense to be proved by the party invoking it, and respondents do not show that the action was not commenced within ten years after the date of the assignment to the American Products Company. In no aspect of the case, therefore, has the defense of the statute of limitations been sustained. The trial justice has found as a fact that "the defendants Ashley, Emley, and Rubino have not derived large profits or any profits from the exploitation of the said corporation assigned to them as aforesaid." If this finding means that there is nothing for which the respondents should account, it is in our opinion unsupported by the evidence and is reversed. The finding that "the plaintiff Johannes Alexander Buegger had knowledge of all the aforesaid transactions in February, 1899," is also unsupported by the evidence and is reversed. The fifteenth finding that the assignment of the corporation to the American Products Company was made with the knowledge and consent of Wreckshagen, Buegger & Herzog is directly contrary to the evidence and is also reversed. Striking these findings of facts from the decision leaves a proper case for the entry of an interlocutory decree requiring the respondents to account.

Since we have adopted the respondents' own version of the transactions, and consequently the one most favorable to them which the circumstances will permit, there is no necessity for ordering a new trial, but a decree can be entered at once in accordance with the foregoing opinion. At the time of the settlement of that decree, any further question as to findings to be reversed, modified, or found will be passed upon.

The judgment appealed from will consequently be reversed, and a judgment entered in accordance with this opinion, with costs and disbursements to plaintiff in this court and the court below.  All concur.