HERBERT F. RAWLL, Respondent, v. BAKER-VAWTER COM-
PANY, Appellant.

First Department, May 2, 1919.

**Equity — suit by traveling salesman to recover possession of bonds
deposited with his employer as collateral security for performance
of his contract — adequate remedy at law.**

Where a traveling salesman deposited bonds of his employer with it as
collateral security for the faithful performance of his contract, and after
his resignation sued in equity to recover possession of said bonds, and
the only allegation as to the nature of the securities was that they con-
stitute " a peculiar species of personal property which have a special
fluctuating value," he cannot recover because he has an adequate remedy
at law, either an action in replevin — the bonds in question being in
possession of the defendant, and having been produced in court on the
trial — or an action in conversion.

A suit for specific performance of a contract for the sale and delivery of
personal chattels, and specifically for securities, will not lie, except under
peculiar circumstances.

MERRELL and LAUGHLIN, JJ., dissented, with opinion.

APPEAL by the defendant, Baker-Vawter Company, from
a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York
on the 18th day of December, 1917, upon the decision of the
court after a trial at the New York Special Term, and also,
as stated in the notice of appeal, from the decision and
findings of the court.

The judgment directed the delivery by defendant of certain
bonds to the plaintiff.

*William S. Evans* of counsel [*Almy, Van Gordon, Evans &
Kelly,* attorneys], for the appellant.

*Jacob I. Berman* of counsel [*Abraham L. Berman,* attorney],
for the respondent.

CLARKE, P. J.:

On the 6th day of June, 1908, the plaintiff and the defendant
entered into a written contract under which the defendant
employed the plaintiff in the capacity of traveling salesman
for the period of two years from the 1st day of July, 1908,
in certain prescribed territory at an agreed commission of

fifteen and one-half per cent.  The plaintiff agreed upon his part to maintain the prices for the line of goods manufactured and for sale by the defendant, as stated in the price book or list furnished, and agreed to use his best efforts in pushing the sale of the goods and to visit all sections of the territory assigned to him and to devote his entire time to the sale of the goods of the defendant.  The contract also contained this provision:

" Said first party shall not engage, directly or indirectly, either as owner or employee, or otherwise, in the manufacture or sale of loose leaf devices or loose leaf accounting systems within the territory described hereinbefore, in any relation other than as a representative of the said second party for the period of one year from the date of the expiration of this contract."

On the 27th of September, 1909, the plaintiff executed an instrument under seal in the form of a bond in the penal sum of $10,000 which contained the following provisions:

" The condition of the above obligation is such that whereas upon the 6th day of June, A. D. 1908, the parties hereto entered into a certain contract in writing wherein and whereby the said Rawll was employed by the said Company in the capacity of travelling salesman for a period of two years from the first day of July, A. D. 1908, and

" WHEREAS, the said Rawll has not fully performed the covenants of said agreement by him agreed to be performed, and Whereas, the said Rawll desires to continue his employment with said Company under the terms of said contract until the expiration thereof, and

" WHEREAS, the said Company is willing that said contract should be continued in full force and effect in accordance with the terms thereof provided the said Rawll makes and executes to it his bond and obligation to faithfully keep and perform all the terms and conditions of said contract agreed by him to be performed,

" Now, therefore, if the said Rawll shall do and perform each and all of the covenants of said contract agreed by him to be performed as therein provided and shall save, keep harmless and indemnify said Baker-Vawter Company, its successors, and assigns, and each and all of them, of and

from all actions, suits, damages, costs, loss or expenses whatsoever including attorney's fees which shall or may at any time hereafter happen or come to them or either of them for or by reason of the breach or failure to perform by said Rawll of the covenants or conditions of said contract by him to be performed as therein provided then this obligation shall be void otherwise to remain in full force and effect. And the said Rawll hereby covenants and agrees •to and does at the time of the execution of this instrument deposit with the said Company two bonds Numbered 152 and 45 respectively, cf the par value of $1,000 each, the same being a part of an issue of bonds of said Company of the aggregate amount of $250,000, as collateral security to this agreement and the said Rawll hereby covenants and agrees that in the event [he] shall violate any one of the covenants in said contract agreed by him to be performed as therein provided, then he shall then and thereby forfeit to the said Company the said bonds as and for liquidated damages in full satisfaction and discharge of any claim or claims of the said Company growing out of the breach or failure by him to perform such covenant and the said two bonds shall then and thereby be and become the absolute property of the said Company free and clear of any claim or claims of the said Rawll."

Thereafter Rawll resigned from the employment of the company, his resignation to take effect on January 1, 1910. The summons and complaint herein were served on the 7th day of April, 1916. The suit is in equity and the complaint alleges that on the 27th day of September, 1909, the plaintiff was the owner of two bonds numbered 152 and 45 respectively of the defendant company and that on or about the 6th of June, 1908, by contract in writing the defendant duly employed this plaintiff as a traveling salesman for a period of two years from the 1st day of July, 1908, and thereafter, and on or about the 27th day of September, 1909, the defendant procured this plaintiff, during the course of his employment, to deposit with it the two bonds owned by him aforesaid, without any consideration therefor and which defendant received from this plaintiff and undertook to hold the same during the life of the employment agreement above mentioned as security for the fidelity of this plaintiff in said employment, and the defendant

agreed to return said two bonds to this plaintiff when his said employment should terminate.

That this plaintiff duly performed all of the terms and conditions on his part to be performed until on or about the 8th day of December, 1909, when it was agreed between the parties hereto that the said employment should terminate as of January 1, 1910, and that subsequent to said date plaintiff duly demanded the return of said bonds from this defendant which it refused to surrender, but wrongfully and unlawfully withholds without legal right; that said bonds are still in the possession of the defendant and constitute a peculiar species of personal property which have a special fluctuating value, and that the same were and are accompanied by interest-bearing coupons, which interest or dividends thereon from December, 1909, to December, 1915, amounted to the sum of $650, and was duly collected by defendant to plaintiff's use, and further amounts since that time, for interest or dividends or both, accrued or accruing have been received by defendant thereon.

That defendant claims said bonds of the plaintiff, in its possession, are not in the State of New York or within the jurisdiction of the courts of this State, and without the equitable intervention of this court plaintiff will be without adequate remedy at law.

Wherefore he demands judgment directing the defendant to restore to him the said two bonds with all the coupons attached thereto and for the payment of the amount of all interest or dividends earned thereon.

The defendant in its answer sets up as a defense that the plaintiff has an adequate remedy at law against the defendant upon the cause of action alleged in the amended complaint and that it is financially solvent and able to respond in damages for the breach of any contract to which it is a party. It also sets up as a separate defense the six years' Statute of Limitations, and as a further defense it sets up the contract and the bond hereinbefore recited and alleges that subsequently to September 27, 1909, the date of the reinstatement of the contract and the making of the bond the plaintiff again violated said contract as revived and reinstated by departing from the price list therein provided and by

going into a competitive line in the territory allotted to him to cover before one year had elapsed after leaving the employ of the defendant, and otherwise broke and violated said contract with the defendant as so reinstated and revived.

I do not think the plaintiff is entitled to recover for the following reasons:

*First.* The plaintiff testified, under cross-examination, that after the 1st of January, 1910, and early in the year he engaged in the business of selling loose-leaf devices and similar merchandise to that, which he had sold for the defendant in the territory described in the contract, and that he turned said orders for this sort of merchandise over to different firms, and that he became connected with the Safety Systems Company early in 1910, and that he invested in said concern and became an officer thereof, and that they manufactured the loose leaf devices and systems similar to those manufactured by the Baker-Vawter Company.

There was uncontradicted testimony by several witnesses that, during the period covered by the restrictions contained in his contract, they purchased from plaintiff, at a lower price than fixed by defendant, similar goods to those manufactured and sold by it. It was also testified that they dealt with plaintiff as representing defendant, and, in one case at least, attempted to rescind said order when it was discovered that the plaintiff was no longer in the employ of defendant.

It seems to me, therefore, upon this evidence there was a direct breach of the contract and that plaintiff thereby lost all right, title and interest in the two bonds which he deposited as security for the faithful performance of his contract, which included the agreement not to engage in a similar business for a year after its termination.

*Second.* I think that he cannot recover because he has an adequate remedy at law, either an action in replevin — the bonds in question being in possession of the defendant and having been produced in court on the trial of this action — or an action in conversion. As to such actions, however, the Statute of Limitations has run and, therefore, he was driven to attempt to recover by this action in equity. Having an adequate remedy at law an action in equity will not lie. He attempts to sustain the action in equity upon the ground

that he is entitled to a specific return of the two bonds sued for because in their nature he could not prove damages. It is well established in this State that an action for specific performance of a contract for the sale and delivery of personal chattels and, specifically, for the securities, will not lie except under peculiar circumstances.

In *Clements* v. *Sherwood-Dunn* (108 App. Div. 327; affd., 187 N. Y. 521) the plaintiff, in his complaint for specific performance of a contract for the sale of shares of stock, alleged that the stock of the said company was valuable but was not a listed stock, was not sold in the open market, and had no certain or fixed market value which would furnish a basis for the assessment of money damages, and that an action at law would not furnish to the plaintiff either a complete or adequate or any remedy in the premises, and that unless the defendants were required to deliver to plaintiff the said stock the plaintiff would suffer great, irreparable and irremedial loss and injury.

It appeared, however, that the plaintiff had sold some shares at a certain price; that he had offered in writing to sell others at another price and that there had been several sales by others before the trial, and this court reversed the judgment for the plaintiff and was in turn affirmed by the Court of Appeals.

In *Butler* v. *Wright* (186 N. Y. 259) the Court of Appeals said: " The rule is that, as to contracts pertaining to personal property, a party should be confined to his action for damages, unless it appears that he is entitled to the thing contracted for in specie, which to him has some special value and which he cannot readily obtain in the market, or in cases where it is apparent that compensation in damages would not furnish a complete and adequate remedy. But in each case the question as to whether a court of equity will take jurisdiction and grant the relief asked for rests in the sound discretion of the court and it cannot be demanded as a matter of right."

This was followed by this court in *Harle* v. *Brennig* (131 App. Div. 742) and in *Perrin* v. *Smith* (135 id. 127). In *Waddle* v. *Cabana* (220 N. Y. 18) the Court of Appeals carefully considered *Butler* v. *Wright* and *Clements* v. *Sherwood-Dunn* (*supra*) and reasserted the rule and pointed out why

in one case it had reversed the Appellate Division and in the other affirmed it.

In the case at bar while the stock is not listed upon any exchange or curb market the only allegation in the complaint is that the bonds constitute " a peculiar species of personal property which have a special fluctuating value," which might be said of any security. The plaintiff himself, however, testified on direct examination: " There has not been any active or open market for them. Q. Do you know for how much these bonds have been sold in the market from the time of your delivery of them to the defendant? * * * A. They have been sold as high as par. Q. How long ago? A. Within a very few months — three or four months ago they sold at par."

And under cross-examination he testified: " Q. * * * These were not the only bonds of the Baker-Vawter Company of this issue that you ever owned, were they? A. No. Q. How many have you owned during the period of time, say from the first of January, 1908, until the present time? * * * A. I have had more than half a dozen and less than a dozen. * * * Q. You have sold some of these bonds recently, haven't you? A. I have. * * * Q. How recently was it that you sold them? A. Within the last two years. * * * Q. Wasn't it within the last year? A. It may have been; I don't know. Q. How many did you sell at that time? A. Three or five. * * * Q. What price did you receive for them? A. 80. Q. That is $800 for each $1,000 bond? A. Yes. * * * Q. Did you ever know of any sale prior to the first of January, 1915, at a price higher than $800? A. No — yes, I bought them myself higher than that."

And it is also testified that there are about 250 stockholders. So that it seems to me that there is no basis for an equitable action and that, therefore, the judgment appealed from should be reversed, with costs and disbursements to the defendant, and the complaint dismissed and · that findings inconsistent with this opinion should be reversed and new findings made.

DOWLING, J., concurred; SMITH, J., concurred on second ground; LAUGHLIN and MERRELL, JJ., dissented.

MERRELL, J. (dissenting):

This action is in equity to recover possession of two of an issue of 250,000 bonds of the defendant company, of the par value of $1,000 each. These bonds of the defendant, for the most part, were held by a Mrs. L. H. Levey of Indianapolis, Ind., and the members of her family. Some of them, however, were distributed among employees of the defendant. The plaintiff was the owner of the two bonds in question. On June 6, 1908, the plaintiff entered into a written contract with the defendant to serve defendant as a traveling salesman in disposing of stationery and loose-leaf ledger equipment manufactured by the defendant. Plaintiff was one of a large number of traveling salesmen employed by the defendant, and there had been assigned to him five districts, known as the Harrisburg, Scranton, Reading, Trenton and Newark districts. Plaintiff's compensation was a commission of fifteen and one-half per cent on goods sold, from which compensation plaintiff was to pay his traveling and other expenses. The term of employment of the plaintiff by defendant under said written agreement was from July 1, 1908, to July 1, 1910. In accordance with the terms of the agreement, plaintiff entered upon such employment and continued thereon until September 27, 1909, when difficulties arose between the employer and the employee. At that time the plaintiff desired to continue and complete his term which, under the contract, would expire on the first day of July following, and it was agreed that the plaintiff should deliver to the defendant the two bonds in question, numbered 152 and 45, respectively. These two bonds were delivered by the plaintiff to the defendant under a written agreement then entered into between the parties, which provided that the bonds were to " indemnify said Baker-Vawter Company, its successors, and assigns, and each and all of them, of and from all actions, suits, damages, costs, loss or expenses whatsoever including attorney's fees which shall or may at any time *hereafter* happen or come to them or either of them for or by reason of the breach or failure to perform by said Rawll of the covenants or conditions of said contract by him to be performed as therein provided then this obligation shall be void otherwise to remain in full force and effect."

Thereupon Rawll continued in defendant's employ and, so far as any evidence appears in the case, thereafter faithfully discharged his duty as such employee.

On or about November 1, 1909, Rawll, in the course of his business, had obtained a large order for defendant's stationery and loose-leaf ledger work for the Domestic Sewing Machine Company of Newark, N. J., which order conformed in all respects with defendant's requirements, with the exception that the prospective purchaser desired special terms of dating to be printed on such stationery. Before accepting the order, the plaintiff communicated this special feature to the manager of defendant's New York office, and the said manager, in behalf of the defendant, directed the plaintiff to accept the order and the same was thereupon accepted by plaintiff. Later on the defendant repudiated such acceptance, the order was returned and plaintiff was informed that defendant would not accept the same nor any order of a similar nature which plaintiff might obtain. Plaintiff objected to the embarrassment in which he was placed by defendant's conduct and stated that he would resign his position with the defendant and take back the two bonds which the defendant held. The defendant acquiesced in such resignation, defendant's New York manager responding to such suggestion from the plaintiff that the resignation was agreeable to the defendant, if that was what plaintiff wished to do. Thereupon plaintiff sent a formal resignation in writing to the defendant's office at Chicago, Ill., to take effect on the first day of January following. Acknowledgment thereof was made in the regular course, and defendant's satisfaction therewith and with the termination of plaintiff's services with the defendant on January 1, 1910, was expressed by said defendant. It was fully understood and agreed at that time that the plaintiff was at liberty to withdraw from defendant's employ, and up to that time, so far as any evidence discloses, there had been no violation of the agreement on plaintiff's part contained in the instrument of September 27, 1909.

Concerning his resignation and the obligation of the contract whereby respondent was employed to serve as traveling salesman for the appellant, the respondent testified that he took up the matter of withdrawal of acceptance of orders

taken by respondent, and which was the cause of respondent's refusal to longer continue in the service of the appellant, and testified: " A. I took it up with Mr. Barclay, the matter of his accepting this order over the telephone, and his rejecting it after I had sent it in. I told him I could not be placed in a position like that with my customers after having received their form of acceptance over the telephone, and then having the matter rejected on sending it in; and he stood firm to his resolution that he could not accept the order or any orders of a similar nature; and I told him that if that was his attitude, that the company was going to take, I would send in my resignation, and made demand for the bonds. Q. This was about six weeks after you had delivered the bonds to the defendant? A. Approximately. Q. What did he say to that? A. He said: ' *All right, if that is what you want to do.*' Q. Was anything else said at that time with reference to your continuing in the employment of the defendant? A. No. Q. What did you do after that? A. I sent in my resignation to the Chicago office. Q. What happened? A. They acknowledged it in the regular manner, and stated that it would be satisfactory for my services to terminate the first of January which was about six weeks from that time."

This would seem clearly to indicate that by mutual consent of the parties the contract for defendant's employment was abrogated and that the term of respondent's service should end with the year, and that the parties understood that incidentally the bonds delivered by respondent to the appellant to secure the faithful performance of the contract thus, by mutual consent, ended, should be returned to the owner. The severance of business relations between the parties seems to have been unaccompanied by rancor or unfriendliness and to have resulted solely because of what seemed to the employee to be a fickleness of business policy on the part of his employer and which embarrassed him in his relations with customers to whom he had sold goods. Immediately following his avowed intention to resign and to redeem his bonds, fully acquiesced in by his employer, as it seems to me, respondent sent to the appellant, on November 1, 1909, his formal resignation in writing, to take effect January 1, 1910, referring the appellant to its New York

office for information as to his reason for resigning. Thereafter, in response to such formal resignation, and on November 11, 1909, appellant accepted such resignation in writing, as follows:

           " CHICAGO, *Nov.* 11, 1909.

" MR. H. F. RAWLL,
      " P. O. Box 472,
         " Harrisburg, Pa.:

   " DEAR MR. RAWLL.— This will acknowledge receipt of your favor of November 1st, entering your resignation to take effect January 1st.

   " *We will accede to your request to release you at that time.*
           " Yours very truly,
" WWB-3          BAKER-VAWTER COMPANY."

This letter of the appellant indicates clearly that it acquiesced in respondent's terminating his service with the year. As stated in such acceptance, the employer *acceded* to respondent's request to *release* him at the time when his resignation thus became effective. It seems to me the height of absurdity for the appellant to now claim the right to retain these bonds delivered as security for the performance of a contract from the obligations of which it thus fully released the respondent. And as further proof of the inconsistency of appellant's present position that it is entitled to hold the bonds in suit as damages for failure of performance and violation on respondent's part of the contract between the parties, and in negation of any violation on his part, we have the letter written by the employer to the respondent on December 8, 1909, as follows:

           " *December* 8, 1909.

" MR. H. F. RAWLL,
      " Harrisburg, Pa.:

   " DEAR SIR.— In compliance with a request from our New York office we herewith direct to you our decision in regard to the recommendation from our New York office concerning your work in your territory during the present month of December.

   " *First.* Having expressed our willingness that your personal service under your contract with us should cease and deter-

mine as of date January 1st, 1910, we propose to allow you as a premium for special effort during this present month of December commission upon all direct orders of your entry and our acceptance shipped on or after January 1st, 1910, at the rate named in your contract with us, said premium to be paid by us on the fifteenth of the month after the invoice rendered for such order is paid by the customer.

" *Second.* This proposal to you is entirely independent of our existing contract of employment with you and in no wise affects the obligations of this contract either to alter, vary or modify its terms.

" Very respectfully,

" BAKER-VAWTER COMPANY,

" By......................"

This letter not only confirms appellant's willingness that respondent leave its employ, but manifested such satisfaction with the excellence of his work during the final month of his service that, acting upon the recommendation of its New York office, defendant avowed an intention to allow respondent " as a premium for special effort " during that month a commission upon orders taken by him and accepted by appellant for goods shipped after the termination of his employment. As further contradiction of the claim that by his conduct respondent had violated his contract with the defendant, we have the manifestly friendly interest of defendant's president in the future business welfare of plaintiff. After plaintiff had delivered his resignation to defendant, but before it became effective, Mr. Vawter, president of the defendant company, in apparently a spirit of friendly interest in plaintiff, who, since his early youth, had been in defendant's service, suggested that a concern engaged in the same line of business as defendant, known as the Safety Systems Company, was for sale, and suggested that plaintiff go and buy it. In accordance with such friendly advice from the president of defendant, plaintiff did make business connections with said Safety Systems Company, and thus the very acts of respondent, which are claimed by appellant to have been violative of respondent's agreement not to engage in manufacture and sale in competition with appellant for the period of one year

from the expiration of the term of his employment, were upon the advice of defendant's own president. In view of the apparent intention of the parties to abrogate the original contract and to release plaintiff therefrom, and in view of the fact that defendant's president was responsible for plaintiff's alleged violation of the contract, it comes with poor grace for the defendant to now claim that it may retain, as liquidated damages, the bonds which plaintiff had delivered to defendant as security for the performance of a contract then in force between the parties. I think the agreement between the parties, permitting plaintiff's withdrawal from defendant's employ, clearly contemplated the return to plaintiff of the bonds in suit.

There was some contention on the part of the defendant upon the trial and upon this appeal that plaintiff had not kept and performed the agreements on his part contained in the original contract, but the record is barren of any convincing evidence showing such violation and is particularly devoid of evidence that plaintiff violated any part of the contract since the delivery of the bonds in question as security for his faithful performance of said contract.

In particular it is claimed by the appellant that after respondent left appellant's employ on January 1, 1910, he engaged, within the restricted period provided by the original contract between the parties, in competition with the appellant, and that, therefore, respondent was guilty of a violation of his agreement not to thus engage for one year after the termination of his contract with defendant, and, as liquidated damages arising from such alleged breach of contract by respondent, the appellant claims the right to hold the bonds in suit. It seems to me there are several answers to appellant's position in this regard. In the first place, plaintiff's agreement not to engage in competition with defendant was upon the express consideration stated in the contract, that plaintiff should receive instruction in the so-called novel and peculiar features of defendant's business, and that defendant would " at its own expense school him thoroughly in the adaptation of loose-leaf devices to accounting systems generally, *and in consideration thereof* " plaintiff agreed not to " engage, directly or indirectly, either as owner or employee, or other-

wise, in the manufacture or sale of loose-leaf devices," etc., for the period of one year from the expiration of the contract. The evidence shows ˙a failure on defendant's part to thus " school " the plaintiff, and thus a failure of consideration for plaintiff's refraining from competition after his employment ceased. As a matter of fact, the business which defendant was carrying on, and in which it is claimed plaintiff engaged after leaving defendant's employ, in violation of his contract, was not one involving trade secrets in the ordinary sense. Many other competing concerns dealt in the same or similar devices as those manufactured by defendant. Competition was lively, and there was no real reason for restricting plaintiff's activities after he left defendant's employ. In the second place, and as indicative of the slight importance which defendant attached to plaintiff's agreement to refrain from acts of competition, we have defendant's president advising plaintiff to acquire the business of the Safety Systems Company and to engage in the very acts which defendant now insists constituted a breach of contract on plaintiff's part. And, finally, by agreement between the plaintiff and defendant's New York representative, in October, 1909, the contract was abrogated, and plaintiff's resignation before the expiration of his term, including the return of plaintiff's bonds, acquiesced in by defendant. And following plaintiff's resignation, with such understanding with reference to his bonds, and which resignation was, on November 1, 1909, formally made in writing, we have defendant's formal acceptance thereof in writing, on November 11, 1909, wherein defendant states, referring to plaintiff's resignation to take effect on January 1st following: " *We will accede to your request to release you at that time.*"

In view of such release, I apprehend there is little left of liability on plaintiff's part under the original contract between the parties. Defendant has, I think, signally failed to justify its retention of the bonds in suit under claim of plaintiff's breach of contract, and as liquidated damages arising from said alleged breach.

As before stated, the action was brought in equity and based upon a severance of the relationship between the parties by mutual consent which became effective January 1, 1910,

and based upon the alleged fact that plaintiff had been faithful to his employment and had in nowise violated the agreement between the parties, made concurrently with and to secure the performance of which, said bonds were delivered to the defendant. The action was to compel the defendant to return said bonds to plaintiff. It was alleged, and proved upon the trial, that since said bonds have been held by the defendant, coupons thereon have been cashed by the defendant to the amount of $850, and plaintiff demanded in his complaint that, besides the return of the two bonds, the defendant be required to account for all dividends, income and other moneys and profits earned by said bonds and received by the defendant since it had been in possession thereof. The plaintiff alleged, and it appeared upon the trial, that the said bonds had a special fluctuating value. They were not listed upon exchange, and their true and actual value was of difficult, if not impossible, ascertainment. Plaintiff prior to bringing action sought to discover the whereabouts of said bonds, but defendant's officials refused to inform him, and plaintiff was unable to ascertain whether said bonds were within the jurisdiction of this court, and so could not bring replevin to recover their possession. Plaintiff was kept in ignorance of the whereabouts of the bonds until this action was upon the day calendar for trial. Upon the trial a representative of the defendant testified that up to a week before the trial the plaintiff's two bonds had been " put up with the trust company in Chicago." Plaintiff had a right to the bonds themselves, and under the circumstances disclosed by the evidence was permitted to proceed in equity to obtain them. (*Treadwell v. Clark,* 190 N. Y. 51; *Beugger v. Ashley,* 161 App. Div. 576.) It further appeared that defendant, while possessed of said bonds, had collected coupon interest thereon to the amount of $850, for which defendant refused to account. The bonds were registered in plaintiff's name. For a long period of years, and since plaintiff was seventeen years of age, he had been employed by defendant. He had grown up with the business, and may well have wished to retain the bonds of the defendant, others of which issue of bonds were held by those with whom he had for years been intimately associated. The bonds, as evidenced by the income received by

defendant therefrom, were a good investment. Under all these circumstances the plaintiff should have the right to repossess himself of said bonds and not be relegated to an action for damages to recover their value, even though it were possible to prove such value. Therefore, this action was, I think, properly brought in equity to obtain a decree of this court directing restoration to plaintiff of said two bonds, with the coupons attached thereto, and for the payment to plaintiff of the amount of any interest or dividends earned by said bonds or by the coupons, together with interest from the dates of the respective payments of such interest coupons, and that the defendant be compelled to account to the plaintiff for any profits and for moneys which plaintiff might have received upon said bonds and coupons except for the wrongful withholding thereof by the defendant.

Immediately after the severance of the relationship, plaintiff demanded the return of said bonds from the defendant, but the same have been ever since retained by the defendant, and the return thereof has been refused by the defendant.

The defendant claims that it has a right to hold said bonds, and that through forfeiture and failure of the plaintiff to keep his contract, he forfeited said bonds and the amount thereof was received by the defendant as liquidated damages under their contract. This position, I think, the defendant cannot maintain. There has been no forfeiture. The parties mutually agreed to sever their relationship and, so far as the evidence discloses, there is no act of the plaintiff upon which a forfeiture of said bonds reasonably can be claimed.

The case was first before the court upon demurrer, and it was held that the complaint sufficiently stated a cause of action in equity for the purposes of the demurrer, but that the defendant, of right, might set up the defense that the plaintiff had an adequate remedy at law, which, of course, would be a good defense to an equitable action if defendant was able to establish that plaintiff had such remedy. The plaintiff demurred to the defense set up in defendant's answer, that the cause of action was barred by the Statute of Limitations. This defense, of course, would not be good, if the action was in equity, but if the proofs should show that the plaintiff had a cause of action at law, then the defense of

the Statute of Limitations would be available to the defendant. Therefore, the court properly held that the defendant might well allege the Statute of Limitations as a defense, not in the equitable action, but as a defense in case it should develop that the plaintiff had an adequate remedy at law. The trial court below, when the case came on for trial upon the merits, seemed, from its opinion, to understand that the question as to the adequacy of the remedy at law had been disposed of on demurrer. I do not think such was the case, as the learned justice at Special Term merely held, for the purposes of the demurrer, that the complaint stated a cause of action in equity, and expressly held that the defendant might allege that the plaintiff had an adequate remedy at law, and might in its answer include allegations appropriate to a defense of an action at law, leaving the determination as to whether or not the facts as developed upon the trial would show that the plaintiff was entitled to relief in equity, or should proceed at law, to await the proofs in the case. However, upon the trial I think it fairly appeared that the plaintiff was entitled to the equitable relief which he sought, and that the law did not offer him any adequate remedy. The court found upon the evidence the making of the two-year contract between the parties on June 6, 1908, which contract by its terms expired on July 1, 1910, upon the compensation hereinbefore mentioned. The court also found that there had been no violation of the contract on the part of the plaintiff, and that the bonds in question were delivered by the plaintiff to the defendant as indemnity against any actions, suits, damages, costs, loss or expenses whatsoever including attorney's fees which should at any time happen after the delivery of said bonds to the defendant on September 27, 1909, and that there was no violation of said agreement and no cause for defendant requiring indemnity through said bonds. The court further found that in November, 1909, the contract of employment between the parties was canceled by mutual consent, and that the relations of the parties were actually severed on January 1, 1910, and that each was released from all obligation to the other under said original contract agreement. The court further found that the plaintiff duly performed all the covenants of his original agreement and of the agreement at the time

of the delivery of said bonds on September 27, 1909, by him to be performed and as therein provided, and that no actions, suits, damages, costs, loss or expenses whatsoever or attorney's fees have occurred or been suffered by the defendant from or after the 27th of September, 1909, upon which contingency the two bonds were delivered to the defendant as collateral security   Upon such findings of fact judgment was directed in plaintiff's favor against the defendant for the surrender and delivery by defendant to plaintiff of the two bonds in suit, and that the defendant pay to the plaintiff the sum of $850 collected by it upon coupons attached to each of said bonds semi-annually from and after the 27th day of September, 1909, to and including the 1st day of December, 1917, and that plaintiff recover of the defendant the costs of the action.   Thereon judgment was entered in plaintiff's favor and against defendant in accordance with said decision, and from which judgment defendant has brought this appeal.

No good reason why plaintiff should not recover of the defendant in equity appears, and I think the decision of the trial court and the judgment entered thereon in plaintiff's favor are amply upheld by the evidence in the case.

The judgment appealed from should be affirmed, with costs.

LAUGHLIN, J., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.   Order to be settled on notice.