## PIECZONKA v. PULLMAN CO.
### No. 142.

Circuit Court of. Appeals, Second Circuit.
March 6, 1939.

Locke, Babcock, Hollister & Brown, of Buffalo, N. Y. (Evan Hollister, of Buffalo, N. Y., of counsel), for appellant.

William L. Clay, of Rochester, N. Y., for appellee.

Before L. HAND and CHASE, Circuit Judges and PATTERSON, District Judge.

PER CURIAM.

This action comes back to us after a second trial; this time on appeal from a judgment for the plaintiff entered on the verdict of a jury. Our former opinion sets out the general outline of the case in enough detail, and we shall not repeat it. Pieczonka v. Pullman Company, 2 Cir., 89

F.2d 353. We held that, while the evidence would not support a recovery under the N.Y. Labor Law, Consol.Laws, c. 31, it would, at common-law; and the chief question is whether that remained true on the second trial. The defendant showed that on July 14, 1928, it secured three "Watters Sandblast Helmets"; and the requisition for these—given to the defendant's purchasing department—declared that two of them were to go to the "Paint Department", and one, to the "Cabinet Department". So far as appears, this intention was carried out, for although it had all the facts at its command, the defendant did not show that these destinations were ever changed. We think that the jury might have fixed the Watters mask as the minimum equipment required for sandblasters. It is true that it was the best then available, and ordinarily a master is not obliged to supply the best; but the cost was only $25 and the defendant needed only four or five. The stake was so great—the workmen's exposure being certain and grave—that, measuring the cost against the risk, the jury might pitch the standard of reasonable care higher than in other situations. The defendant's witnesses—its employees—did indeed say that the deceased had been furnished with such a mask and a hood to go with it, and that he had been found again and again working without it. But the plaintiff met this with the testimony of three fellow workers of the deceased, who, although, as before, they were not very convincing, made an issue for the jury. In the first place, two masks were not enough to go round. Concededly there were three sandblasters on the job, which was in any case one too many; and there was testimony to support a finding that at times there were four. Kasa, one of the plaintiff's witnesses, said so; and Beck, a foreman of the defendant, said that in addition to the deceased, there were "three main ones". This shortage of masks served strongly to corroborate the testimony of the plaintiff's witnesses. It is true that of these, Michalic had left the defendant's employ a few months before July 5, 1929, but he had been there for nine or ten months after the Watters masks had been bought; and his testimony was material, since if the deceased had not been equipped with such a mask during that period, it was not improbable that he was not so equipped later. Kasa and Mucha, the other two, said that on the occasions when they saw the deceased at work, he had only the hood.

The testimony of the defendant's witnesses was not a conclusive answer to this evidence. The deceased may on occasion have been supplied with a Watters mask, but since there were too few to go round, obviously the jury was not bound to believe that he always had the preference. In every likelihood he must at times have received one of the several less adequate hoods or masks which the defendant was then using. We conclude, therefore, that there was enough to support a finding that the defendant failed to supply the deceased with suitable equipment.

The defence of contributory negligence lay with the defendant (§ 265, N.Y. Civil Practice Act) as did that of assumption of risk. As to the last, it is plain that an ignorant sandblaster was in no position to know what sort of mask would best protect him; he must take what was issued on the assumption that it was all he needed. As to contributory negligence, we think that, though the defendant's evidence was competent, it was not a bar, even if the jury had believed the witnesses. Three superiors of the deceased swore that they had come upon him many times working without his mask, and had rebuked him for it. A fellow workman, Kelley, said that he had often seen him without it and heard him rebuked, and that he would then wear it "for a few days". The most that this proved was that he did not wear it as much as he should have, and it is true that while he did not, he had only himself to thank for the dust which filled his lungs. But if the mask furnished him gave him less protection than it should have, he might still have recovered for any injury he suffered while he did use it, and there was every probability that this was substantial. No doubt, this means that the defence was a bar only in case he did not use it at all; but we need not shrink at that conclusion.

The last point is that the plaintiff failed to prove how many years of the deceased's life were cut off because of his exposure after July 5, 1929. The defendant argues that, as she put in no evidence on this issue, the judge ought to have directed a verdict in its favor. This would be true, if the plaintiff had the burden of proof; but we think she did not, and that the defendant did. On the first appeal we discussed two possible views which courts might take of such a wrong as this: one, that each invasion of the plaintiff's person was a fresh tort; the other, that the tort

was single and continuous. We refused to commit ourselves to either view, but we said that under the first, the plaintiff must prove how much the deceased suffered from those invasions which occurred within the statutory period. In this, it now seems to us, we were wrong, because we forgot that the defence is either the Statute of Limitations, or another, very closely akin. The question can arise only in case the tort be plural, and we shall first suppose that, but for the plaintiff's delay, the defendant would have been liable for all the period of the plaintiff's employment; that is, that only the Statute of Limitations protected it. That statute in New York is an affirmative defence (§ 242, N.Y.Practice Act) and the burden of proof is on the defendant. Porter v. Magnetic Separator Co., 115 App. Div. 333, 100 N.Y.S. 888, affirmed on opinion below, 190 N.Y. 511, 83 N.E. 1130; Beugger v. Ashley, 161 App.Div. 576, 146 N.Y.S. 910. The defendant, not being able to show what were the consequences of the outlawed invasions, would fail, and the plaintiff would recover in full. The situation is, however, not quite so simple as that, for the record does not prove that the defendant had been liable during the whole of the period before July 5, 1929, while the deceased was also breathing in dust. We cannot assume that it was so liable, and as to any injuries for which it was not, it did not need to avail itself of the Statute of Limitations. Thus, the deceased's life may have been shortened to some extent by injuries for which the defendant was liable, and for the rest by those for which it was not. It is, moreover, apparent that the plaintiff could not possibly prove how much of the shortening was due to each factor, and must fail if we impose on her the burden of separating the two. It does not seem to us that this should be the result. It is certain that she has suffered some actionable wrong, and it is better to let the jury use even its powers of divination—though the result be no better than a guess—than to turn her away empty-handed. In death cases, however at times we try to disguise it; the verdict is of necessity a speculation. Mortality tables do not tell us how long a given person will live; that depends upon the unknown condition of his health, and the thousand accidents and diseases to which he may fall victim. Yet we do not for that reason turn the plaintiff out of court; rather we subject the defendant to a decision which, though really without foundation as to its amount, is the best

compromise we can reach. What we are doing now, therefore, merely adds another variant to a problem, already incapable of solution. What is at best only a pie-powder rule, becomes a little rougher in application; but the occasion remains the same—to avoid a result which of all possible results is sure to be wrong. The defendant was not indeed entitled to as favorable a charge as it got, but of that it cannot complain.

Judgment affirmed.