BOMPTIN REALTY Co., INC., Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, Kings County, September 6, 1949.

*John M. Wilson, Harry A. Spiegelman* and *Joseph J. Schwartz* for plaintiff.

*John P. McGrath, Corporation Counsel (Joseph J. Dunn* of counsel), for defendant.

F. E. JOHNSON, J.   The memorandum decision upon the appeal (275 App. Div. 843) permits, and perhaps requires, the inference that the complaint states a cause of action; it was, necessarily, examined to determine the nature of the action which was disputed below.   That inquiry must have included such a consideration of its contents that when it was directed that the trial should proceed it should be inferred that it was thereby decided that the complaint states a cause of action at law.   The trial now having been concluded, and the plaintiff having abandoned any claim for equitable relief, damages claimed are for money only; in substance, the claim is because of the unauthorized acts of the city's agents in putting earth and refuse upon the plaintiff's land, over a substantial period of time, *and failing to remove it thereafter.*

It is not necessary to characterize the *nature* of the suit in the complaint, since only a statement of the *facts* need be made; therefore the absence from the complaint of the word " trespass " is not important.   It is not necessary, in order to have a cause of action, that it should have a particular name, since the law finds a remedy if there has been a wrong, and what is the correct name for the conduct of the city's agent is not important.   Defendant almost admitted the fact of the entry, the dumping and the failure to remove, which leaves only the question of authority, damage and the Statute of Limitations to be considered.

There is no evidence permitting a finding that the entry and dumping were permitted, and there is evidence that it was unauthorized.   This wrongful invasion and change of the plaintiff's property, by adding " fill," has raised the level of the land, but the law does not authorize an invader to give unasked " benefits " nor to defend his wrongful conduct by claiming that it has benefited the owner to have property invaded and changed (Restatement, Torts, §§ 158, 161; *Hunt* v. *Hunt,* 152 Misc. 364, affd. 242 App. Div. 721).

The right to have one's property in its original condition, not changed by the well-meaning, but wrongful, conduct of others

is a property right, the invasion of which gives the right to damages, but there is no single method of fixing the damages. Here, the cost of removing the fill might have been used, or, if the property were claimed to have been lessened in value, that lesser value might have been shown; the plaintiff however has the right to sue for the cost of restoring the land to its former condition. There has been no substantial contradiction of the figures submitted by the plaintiff's expert. This proof was properly taken, since upon the appeal it was said that if the defendant should be found liable the damages may be '' for the expense of removing the nuisance ''. Whatever is the name or names of the wrongful acts of the city in both entering, dumping and refusing to remove, it may well be that '' nuisance '' is as good a name as any and yet the complaint need not so characterize the acts sued for. The damages established by the plaintiff, and not seriously questioned, are $82,541.50.

The action was defended on the theory that (1) not only was the claim barred under subdivision b of section 394a–1.0 of the Administrative Code of the City of New York but that (2) the true measure of damage was the detriment, if any, that the land suffered by reason of the city's acts. The foregoing quotation from the memorandum on appeal seems to dispose of the second objection and there remains only the alleged Statute of Limitations.

It may well be said that the record upon that appeal presented that question, even if indirectly, and that the direction to go on with the trial requires the inference that this objection was not considered sound. However, the objection was based upon the assumption that each day's tortious acts of entering and dumping was a cause of action, and that only those overt acts that took place within six months prior to the filing of a notice of claim could be sued for; that notice was filed March 13, 1945. The question of when the dumping took place was tried but the city was not able to throw much light on it, or to contradict the plaintiff's witness who testified to dumping *within* the six months. The appeal memorandum seems to make that question secondary to liability for the continued wrongdoing of allowing the unauthorized fill to stay on the premises.

The logic of the defendant's position here would be that if there were wrongful entry and wrongful dumping over a long period, which ended *more* than six months before March 13, 1945, plaintiff would have no claim, since these overt acts had not taken place within six months and one day prior to that

filing date. In the city's brief on that appeal it was said (p. 2): '' The sole question presented on this appeal is whether this action was brought primarily for damages and is therefore governed by the short statute of limitations (N. Y. C. Admin. Code, § 394a–1.0, subd. b [Williams ed., p. 489]) which confines the recovery by plaintiff to those damages suffered within a period of six months immediately preceding the filing of its claim with the Comptroller on March 13, 1945.''

The first point of that brief took the position that is taken now, namely, that this is an action at law which has been barred by failure to comply with that section of the Administrative Code because none of the *overt acts* complained of took place within six months prior to March 13, 1945. The appeal memorandum stated that this was an action at law, that the trial should be completed at law, and that '' If the defendant is found to be liable, defendant may be cast in damages for the expense of removing the nuisance and for other injuries to the plaintiff's property.'' That court evidently adopted the plaintiff's claim of damages arising from a continuing trespass.

In the *Hunt* case (152 Misc. 364, 366, *supra*) it was said: '' It is well established in many classes of cases that where a wrong is not referable exclusively to the day when the original wrong was committed, a party may recover damages accruing within the statutory period prior to the commencement of the action, even though the original wrong was committed before such time. Illustrations readily occur, such as nuisance, continuing trespass, diversion of water rights, and damages occasioned by the erection of an unlawful structure.''

In the Restatement (Torts, § 158, comment l; § 161, comment b) it was said:

'' An unprivileged remaining on land in another's possession is a continuing trespass for the entire time during which the actor wrongfully remains.''

'' The actor's failure to remove from land in the possession of another a structure, chattel or other thing which he tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land ''.

It seems, therefore, that the action was brought and tried upon one theory but defended upon another, and that the Appellate Division has accepted the plaintiff's theory; the Trial Court must do the same. The defense of the Statute of Limitations was pleaded, so the burden of proof arising thereupon (*Beugger* v.

*Ashley,* 161 App. Div. 576; *Haimes* v. *Schonwit,* 50 N. Y. S. 2d 717) required the city to prove that this was a situation *within* the Administrative Code requirement, for the reason that the acts of damage ceased to be performed more than six months prior to March 13, 1945. Since the decision on appeal it seems to be the law of the case that these acts have *not* ceased, but continued not only after that date but up to the day of the trial, in that the wrongful situation previously created by the city's act is still in existence in its complete form.

If the question of this claim being within the code provision were still open there are authorities that seem relevant and which may indicate that the question is not free from doubt. In the *Thomann* v. *City of Rochester* case (256 N. Y. 165) there was a continuing wrong by reason of garbage and refuse dumped by the city on private property, and apparently never removed; the Court of Appeals said (p. 170) that the owner lost " **the** right to include in the relief an award of damages antedating by more than thirty days the presentation of the notice in the statutory form ", referring to the local law limiting the time to serve a claim.

In the *Meruk* v. *City of New York* case (223 N. Y. 271, 276), it was said that where a defendant unlawfully produces some condition which is not necessarily permanent, " and which results in intermittent and and recurring injuries to another, a separate and complete cause of action arises in favor of the latter every time he is injured as the result of the unlawful act."

It might seem, therefore, as if a cause of action would arise daily since the law, while it pays no attention to parts of the day, does consider a day as a period in which a cause of action could arise; if the duty to remove what has been wrongfully placed is not *continual* but *continuous,* it is a daily recurrent duty, with a daily recurring breach, and it might plausibly be said to give each day, a new cause of action for that wrongful situation or wrongful trespass, or whatever is the right description of wrongly leaving the filth upon the claimant's land. Perhaps, however, the *purpose* of that code section ought to be remembered, namely, that it is primarily to give the city the opportunity to investigate a claim for its own protection, and for possible settlement, but to relieve it of the duty of investigating if the claim is outlawed because stale; six months is the margin of time allowed claimant. One who fell, within the six months, by reason of a hole in the sidewalk for which the city would be liable, by reason of its nature, duration, etc., and who did not, on the next day, have the injuries which were present

*on the day of trial* is allowed to recover for the damages existing on that trial day. If he *failed* to file his claim within the six months, and a year after the accident a bodily-damaged condition arose *which was not present within the six months but grew out of the accident* he could *then* not file and sue for that new damage even though his claim was within six months after that damage appeared. The *overt act that caused the original damage* starts the statute running. If the test of the running of the statute is the wrongful act of defendant, and it can be passive wrongdoing (nonperformance of duty or failure to undo damage) each new dumping gave a new claim; did each day's nonremoval give one too?

The theory upon which the city has defended this case seems to be that the *overt* acts (dumping) started the limitation running, and that if the claim for all damages is filed more than six months after the last overt act, the claim is barred, although damage was caused by the overt acts, *and other damage was caused by the failure to remove.*

Plaintiff seems entitled to damages caused by the failure to remove in terms of the cost of removal; no claim is made for loss of use during any period or specific damage caused by any overt acts of dumping. The city's objections would be sound if that had been the claim, since any claim of overt acts such as entry and dumping and damage from them, would have to be made within six months after the overt acts; perhaps a series of claims would have to be made. If that were the claim then the city's defense might be successful, but that is not the claim, but only for nonfeasance, and failure to act, on the theory that failure to undo a wrong is itself a wrong and may give rise to a cause of action for such failure.

The plaintiff is entitled to judgment for the sum of $82,541.50. Interest was not demanded in the complaint, and while it would be granted if the plaintiff had spent that money in removing the fill, no interest seems grantable on what is strictly an injury for damages they have not yet suffered in terms of money laid out. Costs will be taxed, as of right; if interest is grantable, a motion therefor will be in order.