FREDERICK W. SCHMIDT, Appellant, *v.* THE MERCHANTS DESPATCH TRANSPORTATION COMPANY, Respondent.

PETER PATIE, Appellant, *v.* UNION CARBIDE COMPANY, Respondent.

GIULIO FELLI, Appellant, *v.* UNITED STATES GYPSUM COMPANY, Respondent.

ANTHONY LABIEKO, Appellant, *v.* AMERICAN PIANO COMPANY and Others, Respondents.

RALPH PASSALACQUA, Appellant, *v.* GENEVA FOUNDRY CORPORATION, Respondent.*

RAFFELA VORRASI, as Administratrix, etc., of NICHOLAS VORRASI, Deceased, Appellant, *v.* WHITMORE, RAUBER & VICINUS, Respondent, Impleaded with JOHN PETROSSI COMPANY, Defendant.

Fourth Department, May 15, 1935.

* See *post*, p. 383.

*William L. Clay* [*Philip Halpern* of counsel (*Milton H. Friedman* with him on the brief for Frederick W. Schmidt)], for the appellants.

*Harlan F. Calkins*, for the respondent Merchants Despatch Transportation Company.

*Casper Baltensperger*, for the respondents Union Carbide Company and United States Gypsum Company.

*Percival D. Oviatt,* for the respondents American Piano Company, American Piano Corporation and Aeolian American Corporation.

*Eugene Raines,* for the respondent Whitmore, Rauber & Vicinus.

*Thomas J. Cleere,* for the respondent Geneva Foundry Corporation.

THOMPSON, J. The complaints in the several cases are based upon injuries alleged to have been sustained by plaintiffs-employees by the inhaling of silica dust while at work in their respective defendants-employers' factories. Defendants have moved against the complaints under section 49 of the Civil Practice Act, which reads as follows:

" The following actions must be commenced within three years after the cause of action has accrued: * * *

" 6. An action to recover damages for a personal injury resulting from negligence."

They urge that the causes of action are all in negligence, and cannot be maintained, not having been commenced within three years from their accruing.

It is the claim of the plaintiffs that certain of the causes of action stated in the complaints are not based upon negligence; hence various other longer periods of limitation apply to them; and in any event, that none of the causes of action accrued until the damage caused by the " personal injury resulting from negligence " became factually in existence.

At common law the servant's action against his employer for invasion of the servant's rights by the employer is for negligence. The name given the cause of action by the servant or the differing respects in which he asserts that his employer has wronged him are of no significance. The master owes his servant the duty of reasonable care and the failure to observe reasonable care is negligence; a wrong and a tort. There are various classifications of the evidences of negligence, and of the facts that go to establish the perpetration of, and responsibility for, the resultant wrong, but the remedy is nevertheless in negligence.

In some of the complaints that we are here examining, attempt is made to set up new causes of action, apart and independent from the negligence cause of action. One and all are but the pleading of facts, failure to perform, or negligent performance of, duties under statutes, or characterization of conduct of defendants in the various charges of negligence, upon which the cause of action is sought to be based. They do not constitute new, separate and independent causes of action, and terms applied to them by diligent and skillful pleaders cannot change or transcend the common law, or enact statutes.

The plaintiffs particularly press upon our attention the cause of action based upon the violation of a statute, which they have separately pleaded in some of the complaints, and they insist that it is separate and distinct from the cause of action which they may have for negligence.

The statute upon which this cause of action is sought to be based is a part of the Labor Law, and is designed for the protection and safety of the employee. It imposes no new rule or measure of conduct upon the master, but, at the most, it extends and defines the common-law duty that the master owes his servant, in the particular industries to which it is thus made to apply. By its very terms the necessity and reasonableness of the master's compliance with it is based upon the principle of reasonable care. The quantity of the dangerous properties generated or released before the law requires action on the part of the factory owner must be " in quantities tending to injure the health of the employees." Suction devices shall be provided which shall remove such impurities in the work room, at the point of origin " where practicable." The instrumentalities required to be installed are " proper hoods." (Labor Law, § 299, subd. 3.) In these various respects the statute sets up standards of reasonable care on the part of the owner of the plant, compliance and non-compliance with which are subject to proof, must be submitted to the jury, and, of course, compose questions of negligence. In such case the pleading upon the statute becomes nothing more than a pleading of facts in support of a suit for negligence. In passing it may be observed that the Labor Law itself authorizes an action to determine the validity and reasonableness of its provisions, rules made in pursuance thereof, and orders directing compliance therewith. (Labor Law, § 111; *Scherer* v. *Mitchell*, 188 App. Div. 182; *Lown* v. *Department of Labor*, 216 id. 474; *Van Zandt's, Inc.*, v. *Dept. of Labor of the State of N. Y.*, 223 id. 478.)

These characteristics of the statute at once distinguish the case of *Amberg* v. *Kinley* (214 N. Y. 531) which plaintiffs rely on in this connection. There the judgment was based upon the failure of a factory owner to install fire escapes in pursuance to a statute, the terms of which left no question of fact or discretion open, thus excluding the elements of reasonable care and negligence, both in its obedience and enforcement. Moreover, the court there said: " The failure to observe the statute creates a liability *per se*, or, as is otherwise and with less accuracy sometimes said, is conclusive evidence of negligence." From these words it is obvious that the court did not intend to hold that all cases based on violations of statutes were not negligence cases, or that where such violations

were not the sole ground of recovery, they constituted separate and distinct causes of action. If the action is based on the violation of an absolute and unqualified prohibition or direction in a statute, negligence and contributory negligence have no part in it. But it is otherwise, if the statute is in regulation of the work or dependent on some other fact (*Karpeles* v. *Heine*, 227 N. Y. 74; *Koester* v. *Rochester Candy Works*, 194 id. 95), but we are told that "there may be times, when if jural niceties are to be preserved, the two wrongs, negligence and breach of statutory duty, must be kept distinct in speech and thought." (*Martin* v. *Herzog*, 228 N. Y. 164, 168.) To this let it be said that the violation of a statute is negligence, and that as we see here, in determining whether or not a statute has been violated, questions of reasonable care and negligence may first have to be settled. It follows that in such cases, as in this, questions of negligence become the chief, if not the sole questions, in the case. Can it be said that, nevertheless, there is an action under the statute, separate and distinct, from the action based on negligence? We think not. In these cases, the nature of the statute, and the whole basis of the suit as evinced by the pleadings, show that the two wrongs, if two there be, are so related and interdependent that they come together and coalesce. (*Martin* v. *Herzog, supra*, 168.)

" The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action." (*Baltimore S. S. Co.* v. *Phillips*, 274 U. S. 316, 321.) " One who sustains personal injury through the negligence of another, whether such negligence be predicated upon a breach of duty at common law or an omission or violation of a statutory duty, has but a single cause of action, and that is one for negligence, * * * therefore, in the same count he may allege any number of grounds of liability, at common law or under the statute or both." (*Valenti* v. *Mesinger*, 175 App. Div. 398, 409.) " A complaint which states facts charging liability both under the common law and a statute (*Payne* v. *N. Y., S. & W. R. R. Co.*, 201 N. Y. 436; *Gerseta Corp.* v. *Silk Assn. of America*, 220 App. Div. 302), or under two different statutes (*Luce* v. *N. Y., Chicago & St. Louis R. R. Co.*, 213 App. Div. 374; affd., 242 N. Y. 519), does not necessarily state more than a single cause of action." (*Whalen* v. *Strong*, 230 App. Div. 617, 621.) " The cause of action is based upon the negligence of the defendant in violating the new statutory duty of care, the ground of the action being the negligence rather

than the statute itself." (14 Cornell Quarterly, 383.) The Labor Law provisions install new standards of care, not new causes of action. (*Mautsewich* v. *U. S. Gypsum Co.*, 217 N. Y. 593.) In the words of CROSBY, J., speaking for this court in *Giannavola* v. *General Railway Signal Co.* (244 App. Div. 65): "The Labor Law merely defines more specifically than the common law the master's duty, neglect of which furnishes the basis for the common-law action of negligence."

In this manner we reach the conclusion that the alleged separate causes of action pleaded in the complaints constitute but one cause of action, and that is, a cause of action in negligence.

But if we should hold that the cause of action was based upon the violation of a statute, and was a separate and distinct cause of action by itself, still the case would not come within the terms of the Statute of Limitations applicable to such actions. Section 48, subdivision 2, of the Civil Practice Act provides a six-year period of limitations for "an action to recover upon a liability created by statute." Unless the liability would not exist but for the statute (*Shepard Co.* v. *Taylor Publishing Co.*, 234 N. Y. 465, 468; 37 C. J. 881), the action as pleaded does not come within this provision.

In *Matter of Clark* v. *Water Commissioners* (148 N. Y. 1) it is held that a proceeding instituted for the recovery of the value of private property taken for a public use was not a liability created by a statute which empowered the municipality to take the land, although it provided the procedure by which compensation was to be obtained, but that it was a liability created by the Constitution, and hence did not come within the six-year Statute of Limitation imposed by subdivision 3 of section 382 of the Code of Civil Procedure. As we have before indicated, we are of the opinion that this cause of action is not a separate and distinct cause of action upon a liability created by statute, apart from the common-law cause of action of negligence for a breach of the master's duty to his servant, and attendant liability therefor. The facts pleaded merely go to the support of the negligence action. The cause of action is derived from, and the accompanying liability is created by, the common law.

While it may be urged that it is not necessary to the decision of these cases, we register our opinion that an action brought by a servant against his master for injuries he has sustained because of the failure of the master to furnish him a safe place in, or proper tools and appliances with which to work, based entirely upon a statute so direct, unconditional and mandatory in its terms that it excludes questions of negligence and contributory negligence, is, nevertheless, a negligence action. The principle that one who violates a statute is, as a matter of law, guilty of negligence is a rule of

evidence. Factually the violation conclusively establishes the negligence of him who commits it. It takes that issue out of the case, so far as a trial of it is concerned, but it does not remove the element from the cause of action. The nature and character of the action remains. In master and servant cases it is still the common-law action for a breach of the master's duty to the servant to exercise reasonable care, and it is a negligence action. But plaintiffs contend that if it be true that the causes of action are in negligence, the Statute of Limitations, relating to actions for damages for personal injuries, does not affect them, three years not having elapsed since the day upon which the damage was suffered. The negligent imposition of silica dust into the lungs of an employee by a careless employer is a wrong *per se*. The character of the act causing damage determines whether there is liability. If it is wrongful, the liability is established by the act, when committed. The effect of the act is the damage. The damage transformed into terms of money fixes the recompense the wrongdoer must render to the wronged one. The liability is inherent in the wrongful act, and a cause of action for it is at one with its causation, no matter how remote or contingent the damage may be. Causation does not start with damage — it commences with the wrongful act; else there is no liability. " The ground of liability is, that from every distinct invasion of right, some damage is presumed; and the law therefore makes some award, though no damages are proven, and none are susceptible of proof." (Cooley Torts [4th ed.], § 46.) The dust may lie dormant, and disease, caused by it, fail to manifest itself, as was the case with the forceps in *Conklin* v. *Draper* (229 App. Div. 227; affd., 254 N. Y. 620); the tooth in *Tulloch* v. *Haselo* (218 App. Div. 313), and the sponge in *Capucci* v. *Barone* (266 Mass. 578; 165 N. E. 653). Nevertheless, as in these cases, the cause of action starts with the cause of the injury. The wrongful act alleged to be the cause of the injury must have been committed not later than the last day of the employment. It follows the cause of action accrued on that day.

Plaintiffs assert that disease following the taking of the silica dust into the lungs is of uncertain issue, and of even more uncertain beginnings. It is said that in many instances the dust works no damage, and that in many others it is many years before the injury or damage is manifest, or actually comes into being, and that grave hardship will inure if causes of action therefor are held to accrue as of the time of the taking of the dust into the lungs of the injured person. These suggestions present problems and difficulties of proof; they can have no part in a legal conception, except as they may motivate and justify a statute.

The fact that the Statute of Limitations begins to run with the end of an employment does not require the beginning of an action for damages on that day. The injured servant may, if he chooses. wait until the last day of the three years which the statute prescribes, Upon the trial his case will be submitted to the jury with an instruction that he must be awarded damages, present and prospective, due to the wrongful act for the injuries that he has sustained, and will sustain up to the time of his death.

Nowhere, either at common law, or in statute, does there seem to be a provision that a statute of limitations in actions for personal injuries shall not begin to measure until the manifestation, discovery or the actual beginning of the damage resulting from the wrong. The cause of action arises at the moment of the commission of the act constituting the wrong. The injured one may choose to start his action at once, or he may defer doing so until the end of the prescribed period. In either event he is entitled to recover damages for the invasion of his rights; nominal, if only nominal they are. If more than nominal, then compensatory, for the injuries that he proves he has sustained in consequence of the wrong inflicted upon him.

The reading of this statute contended for by the plaintiffs is revolutionary and destructive of the salient principles of justice and fairness upon which statutes of limitations are founded. If given effect, the right to bring actions of this sort in many cases would expire only with the death of the employee. " ' The Statute of Limitations was intended as a statute of repose, to prevent fraud and to afford security against stale demands which might be made after the true state of the transaction may have been forgotten, or be incapable of explanation by reason of the death or removal of witnesses.' " (*Conklin* v. *Furman*, 48 N. Y. 527, 529; 17 R. C. L. 664; 37 C. J. 684, 685.) We hold that, in cases brought by an injured servant against his negligent master, the Statute of Limitations begins to run when the commission of the wrongful act is complete. We find support for the conclusion we have reached in the *Conklin* v. *Draper*, *Tulloch* and *Capucci* cases, which we have mentioned above. It should be observed that the period of limitation in each of these cases is shorter than in any of the cases we have before us, and that the presence of the deleterious matter in the systems of each of the injured persons, and consequently, the damage thereby, was not known until after the statute had run.

There is analogy for the position we take in this respect in cases of causes of actions for fraud, the Legislature having found it necessary and advisable to enact a special statute, which in clear and explicit terms provides that the Statute of Limitations shall be

counted, not from the date of the fraud itself, but from the date when the defrauded person shall have first ascertained the fact that he has been defrauded. (Civ. Prac. Act, § 48, subd. 5.)

These considerations have persuaded us that each of the complaints states but a single cause of action, and that the cause of action pleaded is a common-law action in negligence. Because of the lapse of more than three years between the time that the employment came to an end and the time of the commencement of the action, in each of these cases the Statute of Limitations has run against them.

The orders should be affirmed, with ten dollars costs and disbursements in each case.

In each case: All concur, except SEARS, P. J., and TAYLOR, J., who dissent and vote for reversal on the law and denial of the motion in an opinion by TAYLOR, J.

TAYLOR, J. (dissenting). In six several actions orders and judgments have been entered striking out certain alleged causes of action and dismissing all the complaints. Plaintiffs' contention is that they have contracted serious physical ailments, silicosis (or pneumoconiosis), from breathing silica (or equally deleterious) dust in factories operated by defendants in which plaintiffs have been employees. In general terms the various " causes of action " alleged are: (1) Negligence; (2) nuisance; (3) breach of contract to furnish a safe place to work and paraphernalia tending to produce safety; (4) fraudulent representations as to safe working conditions; (5) violations of specific sections of the Labor Law amounting to misdemeanors (Penal Law, § 1275); (6) violations of the Industrial Code and rules which have the force and effect of law (Labor Law § 28, subd. 4), and (7) wrongfully and unlawfully maintaining factories improperly and insufficiently equipped — nuisance actions in substance. Justification for striking out the last six of these causes of actions is claimed to be found in the theory that common-law " negligence " is the only kind of wrong pleaded — is the gravamen of all the actions — and that all the other alleged causes are but statements of claimed facts and circumstances which are nothing more than specifications of negligence. The dismissals of the complaints followed judicial conclusions that the several " negligence actions " accrued not later than the moment the plaintiffs left their masters' employment; that subdivision 6 of section 49 of the Civil Practice Act applied and that, therefore, the rights of action had outlawed. The six cases were argued and are treated together.

Without re-entering the field of controversy concerning the definition of the phrase " cause of action " (See *Luce* v. *N. Y., Chicago & St. Louis R. R. Co.*, 213 App. Div. 374; affd., 242 N. Y. 519; *Whalen* v. *Strong*, 230 App. Div. 617), I will assume for the purposes of this opinion that " cause of action " means an assembly of a set of stated facts which, when proved, will entitle plaintiff to legal relief. The question then arises, " When did defendant furnish to plaintiff cause for bringing suit; when did the negligence actions accrue? " The judgments appealed from rest upon a determination that this occurred not later than the immediate moment when plaintiffs left defendants' employment; that a cause of action accrued at once when a defendant employer ceased giving opportunity to an employee to breathe dust capable of causing physical harm. On the contrary, appellants contend that a cause for suit could not accrue until disease came into existence; and that it is a question of fact, not one of law, in each individual instance, whether at the exact time of quitting the employment there was physical injury and damage consequent upon inhalation of dust necessarily so material as to give cause for a lawsuit.

In considering the questions involved in these appeals it should be kept clearly in mind that we are dealing with the validity as pleadings of alleged causes of action in the light of the application of statutes of limitation, of drastic statutes which, when applied, absolutely prevent plaintiffs from making proof. It is the modern view (now more than a trend) that pleadings should be treated liberally in favor of the pleader. If later on proof cannot be furnished as to any claimed cause as stated, that attempt to gain relief will fail. But courts should not be eager, when passing upon pleadings only, to find reasons for denying opportunity for claimed relief. Dismissal now should result from undoubted insufficiency and from that alone.

" Cause " has been defined as " all the circumstances  *  *  * necessary for an event and necessarily followed by it " and an " agency producing a result." (Funk & Wagnalls Standard Dict.) These definitions comprehend something more than initiation or motivation. The mere initiation or creation or existence of conditions capable of producing a result do not amount to causation unless the end is attained. Result is implicit in causation. To cause is to " effect," to " bring to pass." The acts and omissions of defendants in furnishing any plaintiff with an unsafe place to work could well be directly involved initially in the development of silicosis in plaintiff's body. But inhalation of the silica dust does not always or necessarily produce silicosis. Development is insidious and uncertain. (See *Marsh* v. *Ind. Acc. Comm.*, 217

Cal. 338; 18 P. [2d] 933.) And while defendant's conduct might be a potential cause of the disease, actual causation cannot occur until the disease is in existence. Causation is not required to wait on discovery by plaintiffs. But not until the disease has taken hold of a plaintiff to his damage is there causation such that the statute begins to run because " a cause of action has accrued." Statutes of limitation — especially short statutes — are drastic. They serve a good purpose when properly applied. But care should be taken that their scope be not extended to bring about injustice. It is not reasonable criticism of the definition of causation above set out to say that it will result in countless unjust claims through actions brought years after employees have left employment — when the employers cannot make defense. Such situations are in the lap of the gods of things as they are. Reasonable probabilities will be considered by triers of facts. An injustice is no more likely to result than if employees are compelled to bring lawsuits the moment they become exposed to disease or suffering, when they have no reason to expect such a development and the fact may be that injury will result — if at all — only when a substantial period of time has elapsed after exposure.

The courts from which the appeals before us have been taken, after reading the complaints and accompanying papers, have said as a matter of law that the disease complained of had developed and become actionable the moment a plaintiff's term of service ended. This must mean that actionable injury and damage is necessarily brought into existence as a matter of law immediately upon inhalation of dust — even if a plaintiff had been an employee of defendant for but one day — when the complaints allege that such essentials did not exist until later. This is taking judicial notice of the time when a human ailment very baffling to physicians becomes so operative that it is damaging and injurious when it would seem that that conclusion must necessarily depend upon scientific proof.

In *Comstock* v. *Wilson* (257 N. Y. 231, 235, 237, 239) Judge LEHMAN said: " Only for consequences which follow from an infraction of a duty to the injured party, from an invasion of his legal rights, is legal liability imposed. * * * ' In actions of negligence damage is of the very gist and essence of the plaintiff's cause.' (1 Street, Foundations of Legal Liability, 444; Pollock on Torts [13th ed.], 190.) * * * ' The wrong to the plaintiff, if any, began with the battery, and it is for the consequences of the battery only that the defendant is liable.' * * * The collision itself, the constant jar to the passengers in the car, was a battery and an invasion of their legal right. Their cause of action is complete when they suffered consequent damages."

In discussing the second of the above quotations one of defendants' counsel in his brief apparently concedes that " there is no cause of action in negligence at all *unless* actual injury is suffered," while at the same time denying that " there is no cause of action in negligence at all *until* actual injury is suffered." The distinction may exist, but it seems a fine one. If there must be injury and damage how can a complete cause of action come into being until the damage becomes existent? In *Brunsden* v. *Humphrey* (L. R. 14 Q. B. D. 141), from which we quote later, it is held that the negligent act of the defendant in itself constitutes no cause of action and becomes an actionable wrong only out of the damage which it causes. Of like effect are the opinions in *Commercial Bank of Albany* v. *Ten Eyck* (48 N. Y. 305); *Ludlow* v. *Hudson River R. R. Co.* (6 Lans. 128, 133); *Church of Holy Com'n* v. *Paterson, etc., R. R. Co.* (66 N. J. L. 218; 49 A. 1030); *Dodd* v. *Pittsburg, C., C. & St. L. R. Co.* (127 Ky. 762; 106 S. W. 787); *Howard County* v. *Chicago & A. R. Co.* (130 Mo. 652; 32 S. W. 651); *Henry* v. *Ohio River R. Co.* (40 W. Va. 234; 21 S. E. 863); *Boise Development Co.* v. *Boise City* (30 Ida. 675; 167 Pac. 1032, 1034).

The case of *Conklin* v. *Draper* (229 App. Div. 227; affd., 254 N. Y. 620), in so far as it applies to the malpractice action, is greatly relied on by all the respondents. Some things are said in the opinion in that case which are mere dicta and have no application to the real decision. In addition to holding that an action for breach of contract was fairly alleged, as to which the six-year Statute of Limitations was held to apply, the court made it clear that the other action was strictly one " for malpractice " which as to limitation is covered by section 50, subdivision 1, of the Civil Practice Act. That action is in the same category, in fact is classified in section 50 with actions for damages for assault and battery, libel, slander, etc. The other causes of action mentioned and the cause of action for malpractice accrue when the particular act complained of is consummated. Not so as to a cause of action resulting from common-law negligence.

" Beginning of statutory period. The period of limitation dates from the accrual of the cause of action. Wherever the gist of the cause of action is the wrongdoing of the defendant, the date of the act is the beginning of the statutory period. But where the damage to the victim, rather than the misconduct of the tortfeasor, is the gist of the action, the statute does not begin to run until the damage is suffered." (Burdick Law of Torts [4th ed.], p. 298.)

" Now what is the gist of such an action on the case for negligence? * * * Such an action is based upon the union of the negligence and the injuries caused thereby, which in such an instance will as

a rule involve and have been accompanied by, specific damage. Without remounting to the Roman law, or discussing the refinements of scholastic jurisprudence and the various uses that have been made, either by judges or juridical writers, of the terms ' injuria ' and ' damnum,' it is sufficient to say that the gist of an action for negligence seems to me to be the harm to person or property negligently perpetrated. In a certain class of cases the mere violation of a legal right imports a damage. ' Actual perceptible damage,' says PARKE, B., in *Embrey* v. *Owen* (6 Ex. 353), ' is not indispensable as the foundation of an action; it is sufficient to shew the violation of a right, in which case the law will presume damage.' But this principle is not as a rule applicable to actions for negligence: which are not brought to establish a bare right, but to recover compensation for substantial injury." (*Brunsden* v. *Humphrey*, L. R. 14 Q. B. D. 141; 51 L. T. R. [N. S.] 529.)

While an action for damages for a physician's or surgeon's malpractice necessarily involves personal injury to some degree, the nature and scope of the action in New York State differ from those of an action for damages for injury resulting from negligence. In the first place section 37-a of the General Construction Law states what the term "personal injury" includes in this State. "Malpractice" is not in the list. Secondly, an action for damages "for malpractice" (not "for an injury resulting from malpractice") is placed in a special class as to which a two-year limitation is provided. And thirdly in section 49, subdivision 6, of the Civil Practice Act — a three-year limitation section — is specially placed: "An action to recover damages (not for negligence, not for personal injuries in general nor for some other kind of personal injury but) for a personal injury resulting from negligence." The *Conklin* case was dealing with an unskillful or careless act which, in and of itself, created a cause of action — not with a cause of action for damages, an essential element of which would be a resulting personal injury. Furthermore, the real contention of plaintiff-appellant in the *Conklin* case — which did not gain the court's approval — was that the statute did not commence to run until the malpractice was discovered.

It may be urged that testimony of scientific men upon a trial, as a matter of opinion, that silicosis had not developed in plaintiff's body until a certain time would be based mainly upon conjecture. Hardly more conjectural would such testimony be than a court finding as a matter of law upon pleadings alone that the disease developed at a certain definite instant without regard even to the length of time during which plaintiff had inhaled the silica dust.

Next as to the stricken causes of action. Still bearing in mind

that we are dealing as a matter of law with pleadings as affected by statutes of limitation, I concur in the determinations reached at Special and Trial Terms only in so far as they strike out the actions based upon fraudulent representations with reference to " safe place to work " (with respect either to safe *loci* or safe equipment and appliances) and save alone the *Patie* action, which I regard as well pleaded — the actions based upon contracts to furnish a " safe place "— for the reason that the derelictions alleged in the complaints in those actions are of the same character as those underlying the common-law " negligence actions." (*Conklin* v. *Draper, supra; Boyce* v. *Greeley Square Hotel Co.*, 228 N. Y. 106; *Busch* v. *Interborough R. T. Co.*, 187 id. 388; *Frank* v. *Maliniak*, 232 App. Div. 278; *Webber* v. *Herkimer, etc., R. R. Co.*, 109 N. Y. 311; *Hermes* v. *Westchester Racing Assn.*, 213 App. Div. 147; *Frankel* v. *Wolper*, 181 id. 485; affd., 228 N. Y. 582; *Horowitz* v. *Bogart*, 218 App. Div. 158.)

There remain the causes of action based upon statutes. Subdivision 1 of section 299 of the Labor Law reads, in part, as follows: " Every workroom in a factory shall be provided with proper and sufficient means of ventilation, natural or mechanical or both, as may be necessary, and there shall be maintained therein proper and sufficient ventilation and proper degrees of temperature and humidity at all times during the working hours."

Subdivision 2 reads in part: " All machinery creating dust or impurities shall be equipped with proper hoods and pipes connected to an exhaust fan of sufficient capacity and power to remove such dust or impurities; such fan shall be kept running constantly while such machinery is in use."

And subdivision 3 reads thus: " If dust, gases, fumes, vapors, fibers or other impurities are generated or released in the course of the business carried on in any workroom of a factory, in quantities tending to injure the health of the employees, suction devices shall be provided which shall remove such impurities from the workroom, at their point of origin where practicable, by means of proper hoods connected to conduits and exhaust fans. Such fans shall be kept running constantly while the impurities are being generated or released."

There are provisions of the Industrial Code and rules of like import. It has been said that the language of section 299 of the Labor Law is capable of either construction (" Workmen's Compensation: Occupational Disease Not Covered: Silicosis," Cornell Law Quarterly of April, 1935, 392, 401), *i. e.*, either that the statute is mandatory or that its violation simply furnishes evidence of negligence. Appreciating that there is a contrary view, I construe the

opinion in *Amberg* v. *Kinley* (214 N. Y. 531) as obligating us to hold that the causes of action based upon these provisions of the Labor Law — and those of the Industrial Code and rules of like significance — are actions " to recover upon a liability created by statute " (Civ. Prac. Act, § 48, subd. 2), and are in the mandatory class. For example, the requirement of suction devices, by subdivision 3 of section 299 seems to be as mandatory and as much for the sole benefit of a class (employees) as was the requirement of the fire escape for the benefit of factory employees in the *Amberg* case (former § 82, Labor Law, now covered by § 273). Judge CARDOZO concurred in the prevailing opinion in the *Amberg* case. In *Martin* v. *Herzog* (228 N. Y. 164) he had said: " The unexcused omission of the statutory signals is more than some evidence of negligence. It is negligence in itself. * * *

" Whether the omission of an absolute duty * * * is also to be characterized as negligence, is a question of nomenclature into which we need not enter, for it does not touch the case before us. There may be times, when if jural niceties are to be preserved, the two wrongs, negligence and breach of statutory duty, must be kept distinct in speech and thought (Pollock Torts [10th ed.], p. 458; Clark & Linseil Torts [6th ed.], p. 493; Salmond Jurisprudence [5th ed.], pp. 351, 363; *Texas & Pac. Ry. Co.* v. *Rigsby*, 241 U. S. 43; *Chicago, B. & Q. Ry. Co.* v. *U. S.*, 220 U. S. 559). In the conditions here present they come together and coalesce. A rule less rigid has been applied where the one who complains of the omission is not a member of the class for whose protection the safeguard is designed (*Amberg* v. *Kinley, supra; Union Pac. Ry. Co.* v. *McDonald*, 152 U. S. 262, 283; *Kelley* v. *N. Y. State Rys.*, 207 N. Y. 342; *Ward* v. *Hobbs*, 4 App. Cas. 13)."

There is nothing in the opinion in the *Martin* case to weaken the effect of the prevailing opinion in the *Amberg* case as an authority for the conclusion that the instant causes of action based upon section 299 of the Labor Law, being brought by members " of the class for whose protection the safeguard is designed," are, therefore, actions created by statute.

In *DeMilt* v. *Hart* (235 N. Y. 464, 467) Judge POUND, citing the *Amberg* case, speaks of liability " independent of negligence for a violation of the provisions of a statute." In the *Amberg* case Judge CUDDEBACK distinguishes *Koester* v. *Rochester Candy Works* (194 N. Y. 92) and *Marino* v. *Lehmaier* (173 id. 530), which are cited by Judge MANTON in the prevailing opinion in *Michalek* v. *United States Gypsum Co.* (76 F. [2d] 115). And Judge CUDDEBACK fully discusses the cases bearing upon this subject and distinguishes those which are cited by respondents as serviceable to them. I prefer

the reasoning of Judge AUGUSTUS N. HAND in his dissenting opinion in the *Michalek* case and find support in the opinions in the following cases: *Ward* v. *Erie R. R. Co.* (230 N. Y. 230); *Saxton* v. *Delaware & Hudson Co.* (256 id. 363); *Abounader* v. *Strohmeyer & Arpe Co.* (217 App. Div. 43; affd., 243 N. Y. 458); *Town of Waterford* v. *Brockett Lumber Co., Inc.* (227 App. Div. 422); *Texas & Pacific R. Co.* v. *Rigsby* (241 U. S. 33, 39, 40); *Detmar* v. *Nussbaum* (149 Misc. 469; affd., 241 App. Div. 720).

All the various causes of action which should remain in these complaints can be joined with the common-law negligence counts. Citation of authority is unnecessary to support the statement that a pleader — demanding but one form of relief — may state as many separate sets of allegations as he pleases all based upon different theories. This court said nothing in derogation of such right in either the *Luce* case or the *Whalen Case (supra)*. The former case dealt with *res adjudicata* only, as does *De Coss* v. *Turner & Blanchard, Inc.* (267 N. Y. 207), and the latter decided merely that claimed separate causes of action need not be separately stated and numbered in the circumstances there presented.

In the opinion in *Giannavola* v. *General Railway Signal Co.* (244 App. Div. 65) we recently stated — although the statement was not necessarily an essential of the decision made — that certain alleged causes of action based upon nuisance and upon violations of statutes could not keep company in the same complaint with a " negligence " action — for the reason that the factual allegations in the disapproved counts were merely additional specifications of negligence. Further consideration of the opinion in *Amberg* v. *Kinley (supra)* and the crucial bearing of the statutes of limitation upon the instant different alleged causes of action convince me that proper liberality in construing pleading should constrain us — in the interest of justice as I see it — to hold now, on the records here presented, that similar counts should not be stricken.

The judgments and orders dismissing the complaints in the negligence actions should be reversed, with costs, and the motions denied. The orders striking out the various causes of action — with the exception of the causes based upon fraudulent representations and upon the contracts pleaded in all the cases except the Patie case — should be reversed, without costs.

SEARS, P. J., concurs.

In the first case: Order affirmed, with ten dollars costs and disbursements. (The order dismisses the complaint in action for personal injuries caused by contracting pneumoconiosis.)

In the second, third, fourth and fifth* cases, each: Judgment affirmed, with costs. (The judgment is entered pursuant to the order granting a motion to dismiss the complaint in action for personal injuries caused by contracting pneumoconiosis.)

In the last case: Judgment affirmed, with costs. (The judgment is entered pursuant to the order granting a motion to dismiss the complaint in an action to recover for death of plaintiff's intestate resulting from having contracted pneumoconiosis.)