PIECZONKA v. PULLMAN CO.
No. 293.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

354

William L. Clay, of Rochester, N. Y. (Edward R. Murphy, of Rochester, N. Y., on the brief), for appellant.

Locke, Babcock, Hollister & Brown, of Buffalo, N. Y. (Evan Hollister, of Buffalo, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the plaintiff from a judgment for the defendant, entered on the verdict of a jury, in an action to recover for the death of her intestate due to silicosis, contracted while in the defendant's employ. The errors relied upon are in the judge's charge. The defendant had a plant in East Buffalo, N. Y., where it renovated its cars; part of the renovation was repainting, and in order to repaint, the old paint had first to be removed. From 1913 until September 12, 1931, the deceased was a sandblaster in this work, which was done either in a yard in the open air, or under a shed without sides. "Sandblasting" is driving sand at high speed by compressed air through the nozzle of a hose, out of which it comes in a cloud or fog, which envelopes the head of the operator. Unless protected, he must breathe in this dust and in time he contracts a disease of the lungs known as "silicosis," which is incurable, and, if continued, fatal. For the most part the cars to be scoured were taken to pieces and the parts laid on the ground; but about 10 per cent. of the deceased's work was in skeleton cars stripped down to the frame, the roof open and all the windows out, the operator working along the aisles. The evidence, though disputed, would have justified a jury in finding as follows. In 1913, when the deceased began to work, the defendant furnished him with what was known as a "sponge respirator," a guard over the nose and mouth, containing a damp sponge, through which all air had to be breathed in, being breathed out through a one-way valve at the side. Goggles, and a hood to be thrown over the head, completed this guard. It was the best apparatus known at that time, and was continued in use until the spring of 1928 when a new type appeared, consisting of a mask worn over the face, into which air was forced through a pipe attached to the air pressure of the sand blast. Thus the air breathed did not come from the operator's surroundings, and the air current in the mask was always from the inside out. The deceased had one or the other of these masks from the time of their appearance until he left the defend-

ant's employ on September 12, 1931; but he repeatedly refused to use them as directed. He was constantly found without them and reprimanded by the foreman for his negligence; he would put them on, but take them off again as soon as the foreman left.

The plaintiff's cause of action was based primarily on section 299 (2) of the New York Labor Law (Consol.Laws, c. 31), which required that "all machinery creating dust * * * shall be equipped with proper hoods and pipes connected to an exhaust fan of sufficient capacity and power to remove such dust." This subdivision, she argued, was not limited to workrooms, like subdivisions one and three of the same section; it applied to work done in the open air as well. In such cases the parts to be scoured should be put into closed cabinets with an open window through which the nozzle could reach. The workman should stand outside and watch his work through the window, and the dust would be sucked away from the cabinet. One witness testified that in some places the work was done in this way. As to the skeleton cars, they should be run into an enclosure where fans could operate. The State Industrial Board had passed rule 741 as follows: "Dust * * * created in quantities tending to injure the health of employees in * * * any business * * * which involve (s) the * * * use of" silica "shall be removed by means of suction devices as far as practicable at the point of origin." The judge ruled that neither the section nor the rule required the defendant to install suction devices and left the case to the jury on common-law principles. This was the first error charged.

The deceased began an action for his injuries on July 5, 1932, not quite a year after he had left the defendant's employ. He died on April 19, 1933, the plaintiff was appointed his administratrix, and this action was begun on February 8, 1934. The judge charged the jury that if the deceased contracted silicosis before July 5, 1929, the plaintiff could not recover, though there was evidence that the continued breathing of sand between July 5, 1929, and September 12, 1931, might have accelerated his death. The plaintiff asked that the jury should have been allowed to find that even though the deceased had contracted the disease on July 5, 1929, and would have died of it, yet, if his breathing of dust between then and September 12, 1931, has-

tened his death, she might recover. The judge also charged that the deceased assumed the risk of any injuries resulting from throwing off his mask and that if his disease was so contracted he could not recover; that the defendant was responsible only for such appliances as were reasonably necessary for his protection; and that the practice of other employers might be considered in setting that standard. These instructions were alleged to be wrong.

■ The most important question is the applicability of section 299 (2) of the Labor Law. The genesis of section 299 (1), which provides generally for the ventilation of workrooms, was section 11 of chapter 398 of the Laws of 1890, as amended by section 14 of chapter 673 of the Laws of 1892; it required "sufficient means of ventilation * * * in each work-room." This re-appeared, in substantially the same language, as section 86 of the Labor Law of 1897, chapter 415, and the present third subdivision was added by chapter 490 of the Laws of 1907, though still only as a general requirement that workrooms should be freed of dust, gases, and the like. An express provision for suction by hoods and fans was added by chapter 196 of the Laws of 1913; and this became subdivision 3 of section 299 in chapter 50 of the Laws of 1921. These two subdivisions had always been limited to workrooms. Subdivision 2 was first interpolated between them in 1921; it had had a different history. It first appeared as an amendment (section 8 of chapter 673 of the Laws of 1892) to section 8 of chapter 409 of 1886, which had started as an act to regulate child labor. Section 8, after its first amendment (section 2 of chapter 462 of the Laws of 1887), required protection only for hoists, well-holes, and elevator ways; but in 1892 it was recast so as to apply to all sorts of machinery. Dust was included in a sentence which read: "Exhaust fans of sufficient power shall be provided for the purpose of carrying off dust from emery wheels and grindstones, and dust-creating machinery therein." In this form it appeared as section 81 of the Labor Law of 1897 (chapter 415), and in that of 1909 (chapter 36). In 1913 (section 1, chapter 286), section 81 was again recast and the ventilation provisions, much expanded, were made into a second subdivision, the last sentence of which without substantial change became the present subdivision 2 of section 299 of the Labor Law of 1921 (chapter 50). Sec-

tion 81 had thus never been confined to workrooms, and section 86 always had; each preserved its meaning in the recension of 1921, and it would be unwarranted to limit subdivision two to workrooms; it applies generally to all "factories" and a "factory" includes an open yard such as that in which this work went on (subdivision 9 of section 2). It does not, however, follow that it covered the deceased's work; that depends upon its inherent appropriateness to the "machinery" which he used. True, the fact that originally it was associated with emery dust and the wastage of grindstones would not indeed limit its meaning; but it does not cover machinery where a hood and fan would not be effective unless inclosed in a cabinet separated from the workman. Such specific provisions must be obeyed unconditionally; would require the work to be inclosed even though a perfect mask or hood were discovered; the meaning should be plain, and though we ought to construe it favorably, we are not warranted in adding features not specified. A hood and fan is not a hood and fan *and* a cabinet; and a hood and fan without a cabinet would have been useless. Rule 741 added nothing; it did not require the installation of a cabinet; it required suction devices only "so far as practicable." Perhaps a jury might have found that such devices were practicable in the defendant's yards, but, if so, we see no escape from holding under Schumer v. Caplin, 241 N.Y. 346, 150 N.E. 139, that the deceased's continuance at work was an assumption of any risk resulting from their absence. The judge was therefore right to take out of the case the statute and the rule.

Next as to the statute of limitations. The New York Court of Appeals has construed the local Lord Campbell's Act (Decedent Estate Law [Consol.Laws, c. 13] § 130), as meaning that if the deceased has let the statute run against any suit which he could have brought to recover for his personal injuries, his administrator is barred upon his death. Kelliher v. New York Central & Hudson River R. Co., 212 N.Y. 207, 105 N.E. 824, L.R.A.1915E, 1178. Flynn v. New York, N. H. & H. R. Co., 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837, 72 A.L.R. 1311, held the same as to the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59). It is a corollary that if an action be pending when the deceased dies, the administrator may file an action of his own. Haas v. New York Post Graduate Medical School and Hospital, 131 Misc. 395, 226 N.Y.S. 617; Neuman v. Levy, 245 App.Div. 733, 280 N.Y.S. 744; Altzheimer v. Central R. Co., 75 N.J.Law, 424, 67 A. 1051; Grant v. Fisher Flouring Mills Co., 181 Wash. 576, 44 P.(2d) 193. Here the deceased's action, commenced on July 5, 1932, was within three years of his leaving the defendant's employ; if it was not too late, neither was the action at bar. Schmidt v. Merchants Despatch Transp. Co., 270 N. Y. 287, 200 N.E. 824, 104 A.L.R. 450, held that in these cases the limitation begins to run from the date of breathing the dust, not from the development of silicosis; and that the workman must recover in one suit for all injuries which have resulted, or may result, from his exposure, though they have not yet appeared. It did not hold, however, that an action would not lie for injuries due to the last three years' exposure, because recovery was barred for all earlier periods. The employer got no prescriptive right to contaminate his workmen's lungs. Therefore the fact that the deceased could not have recovered if he had left the defendant's employ on or before July 4, 1929, did not affect his right to recover at least for the period between July 5, 1929, and September 12, 1931, or for any aggravation of his malady, though already contracted. Similarly, the plaintiff did not lose her right of action to recover for any loss due to his death, even though his lungs had been so far invaded on July 5, 1929, that he would have died of silicosis anyway. If because of his work during that period he died sooner than he would otherwise have done, that caused a legal injury to her for which she can recover. McCahill v. New York Transportation Co., 201 N.Y. 221, 94 N.E. 616, 48 L.R. A.(N.S.) 131, Ann.Cas.1912A, 961; Jacque v. Locke Insulator Corp., 70 F.(2d) 680 (C.C.A.2).

Her damages will, however, be limited to that loss and she must prove by how much his life was shortened because of injuries sustained during the only period for which he could himself have recovered. That is a corollary of the doctrine that in cases arising under Lord Campbell's Act the deceased's expectancy of life is always a factor. When the tort occurred—breathing the dust after July 5, 1929—the deceased was already a bad risk, his lungs were so damaged that his expectancy was less than normal. So much was suggested obiter in McCahill v. New York Transp. Co., supra, 201 N.Y. 221, 224, 94 N.E. 616, 48

L.R.A.(N.S.) 131, Ann.Cas.1912A, 961. We do not forget that if the victim is so susceptible that the tort starts up a disease, or exacerbates his suffering, as it would not have done in the case of a normal man, he may recover in full, no matter how unlikely the result. The Jefferson Myers, 45 F.(2d) 162 (C.C.A.2); Restatement of Torts, § 461. However, in such cases the tort-feasor's act is by hypothesis a wrong, and it is not unreasonable that its consequences should be visited upon him. But when the shortening of the deceased's expectancy has been due to events for which the tort-feasor is not responsible, this reasoning does not apply. Dillon v. Twin State Gas & Electric Co., 85 N.H. 449, 163 A. 111; 47 Harvard Law Review, 1127. The tort-feasor still cannot excuse himself by showing that the victim would not have died at all, had he been a sound man—so far the usual doctrine goes —but he may show what was the prospective span of life which he cut short. In the case at bar the supposed shortening of the deceased's expectancy on July 5, 1929, was by hypothesis due to the defendant's fault, like its further shortening through his continued exposure, but he could not recover for the earlier injury because he had delayed too long. If so, the plaintiff cannot recover for her loss caused by the same wrongful acts; to let her do so would be to disregard the bar of the statute. Therefore, the measure of her damages will be her pecuniary loss over the period by which the deceased's life was shortened because of his exposure after July 5, 1929.

We have assumed in what we just said that in his action brought on July 5, 1932, the deceased would have been limited to injuries suffered during the preceding three years and could not tack to these anything earlier. That depends upon whether the wrong should be treated as single and continuous, or plural and discrete. The plaintiff's damages would also be based upon a normal expectancy if the wrong be single, and the expectancy on July 5, 1929, if it be plural. This is a quite separate question from whether the suit must be brought within three years from the last breathing of the dust, and the authorities are in conflict upon it. The majority opinion of the Appellate Division in Schmidt v. Merchants Despatch Transp. Co., 244 App.Div. 606, 612, 280 N.Y.S. 836, declared obiter, and without discussion or citing any authorities, that the plaintiff might recover for the whole period; but—

although the opinion in the Court of Appeals did not pass upon the point—the reasoning, on pages 301 and 302, of 270 N.Y., 200 N.E. 824, 827, 828, 104 A.L.R. 450, appears rather more consonant with the notion of a plural wrong. The Pennsylvania Supreme Court is in accord with the dictum in the Appellate Division (Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130); while in Washington [Grant v. Fisher Flouring Mills Co., 181 Wash. 576, 44 P.(2d) 193], and Arkansas [Field v. Gazette Publishing Co., 187 Ark. 253, 59 S.W.(2d) 19], the wrong is treated as plural. In cases of malpractice there is a similar discord, and the situation is also complicated by the fact that the physician by continuing to care for the patient, assumes a continuous duty to guard him against the consequences of past blunders. In De Haan v. Winter, 258 Mich. 293, 241 N.W. 923; Peteler v. Robinson, 81 Utah, 535, 17 P.(2d) 244; Bowers v. Santee, 99 Ohio St. 361, 124 N.E. 238; Schmitt v. Esser, 178 Minn. 82, 226 N.W. 196; Sly v. Van Lengen, 120 Misc. 420, 198 N.Y.S. 608, the tort was held to be single, but plural in McCoy v. Stevens, 182 Wash. 55, 44 P.(2d) 797, and Wetzel v. Pius, 78 Cal. App. 104, 248 P. 288. The point has not been argued before us, and may not arise upon another appeal; in any event it can be saved by a special verdict finding the damages in the alternative; based first upon the assumption of a normal expectancy, and then upon the deceased's expectancy on July 5, 1929. We do not pass upon it now.

Since recovery in any event must be upon the defendant's common-law duty to furnish fit appliances to its workmen, it is subject to defeat in case the deceased refused to wear his mask when required to do so, whatever be the proper doctrine when a specific duty is fixed by statute. Moreover, the judge was right in leaving it to the jury to find whether the masks were sufficient protection as the art stood when they were issued. The jury must fix the standard and they may avail themselves of prevailing practices among other employers, although they are of course not bound to accept them as conclusive. All this is too well settled for dispute.

The defendant argues that the judge should have directed a verdict in its favor, because the evidence was not enough to support a finding that it did not issue proper masks to the deceased. That is not true. The testimony of the two comrades

of the deceased that he did not receive any mask while they worked with him, was not indeed convincing; but it was not inherently impossible, and the jury had to judge of its truth. Furthermore, they were not obliged to accept the mask used after July 5, 1929, as the standard; its adequacy depended upon how completely it protected the wearer and what other expedients were available. If a verdict is taken as to the period before July 5, 1929, the adequacy of the first mask will also be for them, except of course that there can be no recovery whatever, unless proper protection shall be found to have been lacking after July 5, 1929.

Judgment reversed; new trial ordered.